[No. 17927.  Department One.  July 31, 1923.]

JACK E. SCHAFFER, *Plaintiff*, v. SUNNYSIDE-YAKIMA OIL COMPANY, *Defendant*, YAKIMA TRUST COMPANY, *Receiver, Respondent*, JACK SCOON *et al.,* *Appellants.*[1]

CORPORATIONS (160, 169)—REPRESENTATION BY OFFICERS—BILLS AND NOTES—AUTHORITY TO EXECUTE. A note executed on behalf of a corporation by an officer having general authority to execute notes, running to himself as payee, is *prima facie* void and the burden is upon the holder to show that it is the obligation of the corporation.

SAME (227)—INSOLVENCY—CLAIMS AGAINST RECEIVER—VALIDITY —BURDEN OF PROOF. A corporation which assumed the indebtedness of another is *prima facie* liable upon, a claim allowed by the receiver, based upon the note of such other corporation, mentioned in its records and signed by its treasurer, upon which there is an indorsement of interest made after it had parted with its property.

Appeal from an order of the superior court for Yakima county, Holden, J., entered October 23, 1922, levying an assessment upon stockholders of an insolvent corporation for unpaid stock subscriptions, after a hearing before the court.  Modified.

*Stephen E., Chaffee* and *R. John Lichty,* for appellants.

*Grady, Shumate & Velikanje,* for respondent.

MACKINTOSH, J.—This is a tangled skein, but, as far as we are able to unravel it, the thread of the matter

[1]Reported in 215 Pac. 958.

appears to be that the Yakima-Texas Oil Company was a Texas corporation, which had incurred considerable indebtedness and which owned certain oil rights in that state. It was desirous of disposing of both its assets and liabilities and the Sunnyside-Yakima Oil Company, a corporation, was organized, which, it is alleged, received the assets and assumed the liabilities of the Texas company. The Sunnyside company was later placed in the hands of a receiver, who allowed certain claims against the company, and there being no assets in his hands with which to pay these claims, and there being some 350 stock subscribers whose subscriptions had not been paid in full, on notice to the creditors and these subscribers, an order was made levying an assessment upon these stockholders for the full amount of their unpaid stock subscriptions, and from this order, the stockholders have appealed.

The record in this case is in a very unsatisfactory condition and we have experienced great difficulty in arriving at the merits of the controversy. There is nothing in the record showing the by-laws or minutes of any meeting of the stockholders or board of directors of the Sunnyside company; no record of any assumption by that company of the debts of the Texas company—the only evidence in this respect before us are uncertified carbon copies of minutes of the Texas company of meetings held in Texas, which refer to an offer by the Sunnyside company to assume the Texas company's debts, and a deed from the Texas company to the Sunnyside company, filed in Texas, which refers to such assumption. There is no showing of the authority of the officers of the Texas company and the Sunnyside company to execute the promissory notes which are the bases of the liability of the two companies, and the validity of the claims must, to a large

degree, depend upon the fact that the receiver for the Sunnyside company has approved them.

The claims which have been allowed are as follows:

| | |
|---|---|
| Cascade Creamery Company | $5,000.00 |
| Nettie E. Duncan | 3,000.00 |
| Gerald J. Schreiner | 2,635.20 |
| S. J. Simonson | 5,326.81 |
| S. J. Simonson | 3,343.05 |
| First National Bank of Sunnyside | 6,200.00 |
| F. T. Highfill | 2,118.68 |

The promissory notes referred to were signed in the name of the Texas company or the Sunnyside company by one S. J. Simonson, some being signed by him as secretary, some as treasurer, some as secretary-treasurer, and some without any designation of any official position. The only way in which we can intelligently discuss these claims and determine their validity as to the appellants is to take them up *seriatim*.

(1) Cascade Creamery Company: The record shows that S. J. Simonson was president of the Cascade Creamery Company. This claim consists of three items: (a) a note for $1,000, signed Yakima-Texas Oil Company by Simonson as secretary-treasurer, made payable to Simonson and assigned to the Cascade Creamery Company. The law is that where an officer of a corporation who has general authority to execute negotiable instruments in the name of a corporation executes a negotiable promissory note in the name of the corporation, by himself as such officer, to himself as payee, renders thereby such note *prima facie* void, and the burden is upon the holder of the note to show that it is in fact the obligation of the corporation. *Capital City Brick Co. v. Jackson*, 2 Ga. App. 771, 59 S. E. 92, where many authorities are cited and re-

viewed; *Porter v. Winona & Dakota Grain Co.*, 78 Minn. 210, 80 N. W. 965; *In re Eastman Oil Co.*, 238 Fed. 416, and *Park Hotel Co. v. Fourth Nat. Bank of St. Louis*, 86 Fed. 742, where Judge Sanborn, in discussing this question, said:

"General authority to conduct the business and to issue the promissory notes of a corporation is authority to do those acts for corporate purposes, and in the interest of the corporation, only. It does not include the power to do them for the exclusive benefit of others, to the detriment of the corporation. And while a promissory note, made by an agent or officer having such authority, in the usual form, and taken by a stranger in the ordinary course of business, carries with it the presumption that it was issued for corporate purposes, and under lawful authority, a note issued by such an agent, payable to himself, is accompanied by no such presumption, but is itself notice that it is without the scope of his general power, and that it does not bind its principal, unless its execution was specially authorized by the corporation, through its directors or officers, other than the agent to whom it is payable. Such a note is a danger signal which the discounter or purchaser disregards at his peril. It is notice to him that, if it is contested, he cannot recover upon it, under any general authority in the agent, or at all, unless he proves that the agent was specially authorized to make that particular transaction, or to make contracts of the corporation with himself. To the general rule that the acts and contracts of a general agent, within the scope of his powers, are presumed to be lawfully done and made, there is an exception as universal and inflexible as the rule. It is that an act done or a contract made with himself by an agent on behalf of his principal is presumed to be, and is, notice of the fact that it is without the scope of his general powers, and no one who has notice of its character may safely rely or recover upon it without proof that the agent was expressly and specially authorized by his principal to do the act or make the contract. . . :

This exception is a striking illustration of the policy of the law to prevent the possibility of conflict between the duty and the personal interest of an officer or agent. It prohibits him from acting for both himself and his principal wherever their interests clash, and makes every act and contract in which he violates the inhibition voidable at the election of his principal. It forbids him to act at the same time as vendor and purchaser, or as lender and borrower, or as promisor and promisee. It forbids him to sell as the agent of his principal, and to buy for himself; to lend as the agent of his principal and to borrow for himself; to promise as the agent of his principal, and to accept the promise and reap the benefits himself.''

No authority has been cited by the respondent contrary to that established by these cases and, without any independent investigation, we assume that they state the uncontradicted rule. That being true, this note was *prima facie* void and cannot be held as a valid claim against the appellant in this case, irrespective of the fact that there is not sufficient record of its ever having been assumed by the Sunnyside company.

(b) A $2,000 note, signed by the Yakima-Texas Oil Company by Simonson, without any designation of his corporate office, made payable to Simonson and assigned by him to the Cascade Creamery Company. What has been said in regard to claim (a) applies here.

(c) A $2,000 note, signed by the Yakima-Texas Oil Company by Simonson, without official designation, payable to Simonson and assigned to the Cascade Creamery Company. The same conclusion must follow in regard to this note. None of these notes a, b, and c are mentioned in either the copy of the minutes of the Texas company nor the deed above referred to. We hold this entire claim of the Cascade Creamery Company invalid as against these appellants.

(2)    Claim of Nettie E. Duncan, who the record would indicate is an employee of Simonson. This claim consists of a note for $3,000, which is mentioned in the minutes of the Texas company and the deed, being signed by the Texas company by Simonson as treasurer. This note bears endorsement of an interest payment made after the Texas company had parted with its property, and having been allowed by the receiver of the Sunnyside company is *prima facie* an obligation of that company, and in order to establish its invalidity the burden of proof is upon the appellants, and, not having sustained that burden, it must be allowed as a valid claim.

(3)    Claim of Gerald J. Schreiner. This claim is for labor furnished and money expended by the claimant for the Sunnyside company, and is a valid claim.

(4)    Claim of S. J. Simonson. This claim relates to six items: (a) $337, the balance due on a promissory note of $1,000, signed by the Texas company by Simonson as secretary-treasurer, and payable to himself. What has been said in regard to claim 1(a) applies here and this portion of the claim must be disallowed. (b) a promissory note for $1,000, signed by the Sunnyside company by Simonson as secretary-treasurer, payable to himself. Disallowed on the same ground. (c) promissory note for $2,000, signed by the Texas company by Simonson secretary-treasurer, payable to the Central Bank and Trust Company of Yakima, upon which $1,054.82 has been paid by Simonson, upon his obligation as an endorser of such note. There is nothing in the record to show that this obligation had been assumed by the Sunnyside company, even taking for granted that the minutes and deed referred to were sufficient evidence of the assumption by the Sunnyside company, and the claim is disallowed. (d) a note for

$361.09, signed by the Sunnyside company by Simonson, secretary-treasurer, payable to himself. What was said in regard to 1 (a) applies here and this claim is invalid against appellants. (e) note for $500 signed by the Sunnyside company by Simonson, secretary-treasurer, payable to himself. This falls in the same category. (f) a claim for $273.90 for interest paid by Simonson to the First National Bank of Sunnyside on account of money borrowed by the Sunnyside company from that bank. This claim, having been allowed by the receiver, is *prima facie* valid and will stand. (g) claim for $1,800 on account of Simonson's salary as secretary-treasurer for one year. This claim, having been allowed by the receiver, must be sustained.

(5) This is a claim by Simonson for $3,343.05, being the amount which he paid upon a judgment obtained by the Sunnyside bank against him on his endorsement of a note signed by the Sunnyside company by himself as secretary, and payable to the Sunnyside bank. This claim must be allowed for the reasons stated in allowing similar claims hereinabove.

(6) This is a claim of the First National Bank of Sunnyside for $6,200 on a note signed by the Sunnyside company by Simonson as secretary, payable to the First National Bank of Sunnyside, and is allowed as coming under the same rules already referred to.

(7) This is a claim for $2,118.68, for one Highfill, who seems to have been president of the Texas company. The claim is mentioned in the minutes and deed of the Texas company, but we are unable to discover in the files any claim presented to the receiver for this amount; it is therefore disallowed.

Our conclusion, therefore, is that the court was in error in allowing against the appellants claims in the amount of $27,623.74, and that the allowance should

only have been $17,252.15. The case is therefore returned to the trial court for the purpose of modifying its order to the end that the receiver may demand from the stockholders such an amount only as is necessary to satisfy the valid claims, as allowed by us above, and for the expenses of the receivership.

MAIN, C. J., BRIDGES, HOLCOMB, and MITCHELL, JJ., concur.