[No. 18365. Department Two. March 29, 1924.]

HILL SYRUP COMPANY, *Plaintiff and Appellant,* v.
NATIONAL CITY BANK OF SEATTLE, *Defendant
and Appellant.*[1]

CORPORATIONS (160, 169)—ESTOPPEL (35-1)—REPRESENTATION BY
OFFICERS—PAYMENT OF PERSONAL DEBTS—TWO INNOCENT PARTIES. A
bank collecting corporate checks signed by its president, with knowl-
edge that they were being used by the president to pay his personal
debts, is liable to the corporation on an implied contract for money
had and received; the rule that, as between two innocent parties,
the loss should fall upon the one who made the fraud possible having
no application to protect one who fails to exercise ordinary caution.

SAME (178)—CONTRACTS—AUTHORITY—NOTICE TO PERSON DEALING
WITH CORPORATION. In an action against a bank for money had
and received in collecting corporate checks belonging to the bank,
wrongfully drawn by the president of the corporation, a receipt
signed by two of five trustees purporting to settle all claims against
the president is no defense where none of the stockholders or offi-
cers knew of the wrongful issuance of the checks when the receipt
was given; the receipt being subject to proof that it could not be
supported by the release.

Cross-appeals from a judgment of the superior court
for King county, Ronald, J., entered August 6, 1923,
upon findings favorable to the plaintiff, in an action
for money received, tried to the court. Reversed on
plaintiff's appeal; affirmed on defendant's appeal.

*James R. Chambers,* for plaintiff.
*Almon Ray Smith* and *Herr, Bayley & Croson,* for
defendant.

MITCHELL, J.—The Hill Syrup Company, a corpora-
tion of Seattle, as plaintiff, instituted this action
against the National City Bank of that city to recover
on five separate causes of action for money had and
received. The complaint as to each cause of action is
that funds of the company were received by the bank

[1]Reported in 224 Pac. 578.

through checks of the company signed by W. E. Sander, president of the company, without authority from the company, under circumstances charging the bank with notice that the funds of the company were being improperly used by Sander to pay his individual obligations. A non-jury trial resulted in findings and judgment for the company upon three of the causes of action and against it as to the other two. Each party has appealed from those portions of the judgment against it.

In many respects the case is similar to the recent one of *Hill Syrup Co. v. Marine National Bank*, 128 Wash. 509, 223 Pac. 595.

First, we dispose of the bank's appeal in which three certain checks dated December 2, 1920, March 11, 1921, and May 23, 1921, respectively, and hereinafter further mentioned, are involved. The affairs of the company for some time were managed by three persons, who were its stockholders and trustees. Wm. E. Sander was its president and manager and had entire charge of the company's finances, together with the keeping and supervision of all its books and accounts. The other two trustees devoted all of their time to the business of the manufacture and marketing of the products of the company.

The record is barren of any evidence that any other stockholder or trustee of the company knew anything whatever of the fact that Sander was using the company's money to pay his private debts, including these particular ones, until long after the transactions here involved had taken place, which repels the idea of the company being bound by ratification, assent or acquiescence. *Murphy v. Clarkson*, 25 Wash. 585, 66 Pac. 51; 21 R. C. L. § 107, p. 928. Nor is there any evidence that the company, or any of its other stockholders or trustees, had ever given Sander any authority to use

the funds of the company for other than the business of the company. The bank was not a depositary of the funds of the company and none of its officers had any knowledge that Sander had ever paid any of his private debts with the funds of the company, other than the five instances involved in this action.

In August, 1920, the Kimball-Camp Motor Company of Seattle (that may be spoken of hereinafter as the Motor Company) sold and delivered to Sander a Paige automobile for $2,000, on conditional sale contract, which Sander agreed to pay in installments. It appears that, on or about December 3, 1920, the motor company borrowed $10,000 from the bank and gave its note therefor, with Charles W. Camp as guarantor, at which time it delivered to the bank the conditional sale contract with Sander, duly assigned by the motor company, and on which $1,635 and interest were still due, together with other like securities, as collateral. At the same time the motor company delivered to the bank a check endorsed by it in the sum of $408.75, payable to the Motor Company, drawn by "Hill Syrup Company, by Wm. E. Sander, President," on another bank, the depositary bank of the company. On the face of the check on a form in the upper corner to the left there were printed words as follows: "When endorsed this shall be receipt in full for your bills as follows: Date of invoice; Amount," to which was added in typewriting, "12/2, a/c W. E. Sander, 408.75." The check was promptly collected by the bank and applied on the account owing by the motor company to the bank. The bank admitted that it knew at that time that the check was intended as a payment on the automobile contract between the motor company and Sander. Thereafter, as payments became due on the conditional sale contract, the bank notified Sander of the amounts and due dates of the installments, in

obedience to which he delivered to the bank two checks, one on March 11, 1921, and the other on May 23, 1921, each in the sum of $408.75, each payable to the bank and drawn on the company's depositary bank, each signed in the name of the company by Wm. E. Sander as president, and each having a memorandum on the left-hand upper corner similar to that on the check heretofore described. The bank collected the two checks in due course and applied the money on the account due the bank by the motor company, knowing at the time of each payment that it was intended by Sander as a payment on his conditional sale contract held by the bank as collateral.

As to these three checks it is not a case for the application of the doctrine which prevades the authorities relied on by the bank, that as between two innocent parties the loss should fall upon him who made the fraud possible. That rule is recognized to protect those who exercise ordinary caution. Here the bank is entirely beyond such consideration, for it admits that it knew the company's name was being used by its president in payment of his private debts. Upon this branch of the case we find it unnecessary to go further into the facts which are largely similar in many important particulars to those set out more fully in the case of *Hill Syrup Co. v. Marine National Bank, supra;* while as to the law, we adopt the decision in that case and the authorities therein cited as applicable and controlling in this case, to the effect that the bank is liable upon implied contract for money had and received as represented by the three checks.

The appeal by the company relates to the other two checks referred to. First, it may be repeated that the other stockholders and trustees of the company had no knowledge that Sander was using the company's money to pay these or any other of his private debts.

The company, or any of its trustees and stockholders, had never given him any authority to do so, nor is there any evidence to bind the company by ratification, assent or acquiescence.

The two checks were used as payments to the motor company by Sander on his automobile conditional sale contract. One of the checks, dated August 24, 1920, was for $500. The other, dated September 18, 1920, was for $155. Each was drawn payable to the order of the motor company, drawn on a Seattle bank other than the defendant herein, and was signed "Hill Syrup Company by Wm. E. Sander, Pres." The checks were endorsed by the motor company and deposited with the bank, party to this action, with which the motor company carried its deposit and checking account, and thereafter checked out by the motor company in the ordinary course of its business, the bank having collected the checks from the one on which they were drawn. Each of the checks contained the memorandum form common to the other checks already referred to. That form is in no sense insignificant, but occupies about one-fourth of the face of the whole instrument and consists of clearly printed words used in connection with columns and lines suitable and manifestly intended for the statement of an account, so that when the check is endorsed it serves as a receipt in full from the payee of the check to the one whose account is stated in the memorandum. In this form on one check there was plainly typewritten "8/24, W. E. Sander, 500.00," and the other "9/17, W. E. Sander, 150.00."

It would appear that in each case it was not a matter of being simply sufficient to excite the suspicion of a reasonably cautious person, but, on the contrary, notice was plainly given that Mr. Sander was using the money of a corporation of which he was president to pay his private debts to the motor company, thus seek-

ing to obtain a private advantage at the expense of his principal by a means that "bears its death wound upon its face." The bank had the undoubted right to refuse the checks for collection, but having received and collected them, under the notice it had, it assumed obligations to the company whose checks they were, superior to those it owed the motor company. The money was at all times the money of the company, and after the bank received it, in allowing it to be checked out by the motor company the bank acted at its own peril.

On this branch of the case, rather than discuss or refer to the many cases cited by counsel, we are disposed to rely on the doctrine of *Harden v. State Bank of Goldendale,* 118 Wash. 234, 203 Pac. 16. That was a case in which the executor of an estate borrowed $1,900, represented by two promissory notes, from the bank and delivered as security for the loans four notes and mortgages belonging to the estate represented by the executor, without any authority from the probate court so to do. It was borrowed in pursuance of the private business of the executor. Two of the notes, $587 and $859, were paid to the executor, who took the money to the bank and obtained credit to that amount, less $359, on his notes due the bank, and directly or through the bank delivered the mortgage notes to the makers. The $359, portion of one of the collections deposited in the bank, was thereafter allowed to be checked out in connection with the private business of the executor. Shortly thereafter the executor died and subsequent representatives of the estate that had owned the notes and mortgages sued the bank and were allowed to recover the full amount of the proceeds of the two mortgage notes that had been paid to the bank. In that case it was said:

"Respondent (bank), in any event, objects to judgment against it in the whole amount collected on the

Yates note, because it retained only $500 of that amount and paid the balance, to wit, $359, to Clark, who was the executor. But the testimony shows that the respondent was possessed of such facts as required it to learn and know that Clark, as executor, gave the notes and put up the collateral security belonging to the estate solely for his own advantage, and that the estate did not, nor was it contemplated that it would, obtain any benefit whatever from the transaction. It is true respondent did not obtain the benefit of the $359, but paid it directly to Mr. Clark. But respondent was doing a banking business and placed that sum of money to Clark's private banking account, and knew that he was checking against such account for his own private ends. With all of this information at hand, the respondent must be held liable for the whole amount it collected from the collateral which it unlawfully held.''

The manifest theory upon which judgment was allowed against the bank for the $359 was that, notwithstanding the fact it had received no benefit from that particular portion of the collections, it had nevertheless acquired it under circumstances that required it to learn and know that the notes and mortgages had been placed with it as collateral without any authority and that the proceeds were being used solely for the executor's private advantage. So in the present case, when the bank collected the two checks, it had in its possession funds that it knew, by the contents and faces of the checks, could not be used by Sander in the payment of his private debts, and it also knew that its customer, the motor company, by the same means had the same knowledge. That is, the bank acquired the money under the implied contract of money had and received, in favor of the company whose checks had been used in making the collections.

Considerable time after these transactions occurred, the company, which had gotten into a precarious and practically insolvent condition, was reorganized by in-

creasing its number of stockholders, whereupon its board of trustees was increased to five, excluding Sander. Two of those trustees, president and secretary of the company, who it appears had suffered personal financial losses at the hands of Sander, signed and delivered to him, in the name of the company, a written instrument denominated "Receipt" that is set out in full in the opinion in *Hill Syrup Co. v. Marine National Bank, supra.* It is contended herein that the execution and delivery of that receipt is a complete defense to all the causes of action set up in this complaint. We do not think so. What is said of that contention, and the conclusion reached thereon in the case of *Hill Syrup Co. v. Marine National Bank, supra,* is entirely appropriate and applicable here, under the evidence in this case. In addition thereto it may be stated that the instrument was nothing but a receipt, a kind of written instrument always subject to proof as to the real consideration, which could not possibly be supported by the release or acquittance of either Sander or the bank of any liability growing out of the transactions represented by the checks in this suit, for the reason that, at the time the receipt was given, none of the stockholders or officers of the company knew that the checks, or either of them, had been given.

That portion of the judgment appealed from by the bank, involving three causes of action, is affirmed. That portion of the judgment appealed from by the company, involving two causes of action, is reversed and remanded with directions to the superior court to enter judgment thereon as demanded in the complaint.

MAIN, C. J., BRIDGES, and PEMBERTON, JJ., concur.