[No. 18592. *En Banc.* March 18, 1925.]

HILL SYRUP COMPANY, *Appellant,* v. AMERICAN SAVINGS BANK & TRUST COMPANY, *Respondent.*[1]

CORPORATIONS (156, 160, 178)—REPRESENTATION BY OFFICERS—PERSONAL USE OF FUNDS—AUTHORITY—NOTICE TO PERSON DEALING WITH CORPORATION—EVIDENCE—SUFFICIENCY.  A bank, paying corporate checks wrongfully drawn by the president of the company in favor of another corporation in which he had a controlling interest, is not liable for the proceeds, credited to the payee, where it had no notice of want of authority to draw the checks and never received or retained to its own benefit any of such proceeds; and knowledge of the drawer's interest in both corporations is not such a suspicious circumstance as to put the bank on inquiry.

Appeal from a judgment of the superior court for King county, Carey, J., entered September 28, 1923, upon findings in favor of the defendant, in an action for money received, tried to the court.  Affirmed.

*James R. Chambers,* for appellant.

*Stratton & Kane* and *Lyons & Orton,* for respondent.

*Donworth, Todd & Higgins, Chadwick, McMicken, Ramsey & Rupp, Peters & Powell, Bausman, Oldham & Eggerman,* and *Grinstead, Laube & Laughlin (Hyman Zettler,* of counsel), *amici curiae.*

ASKREN, J.—This is an action to recover the proceeds of four checks amounting to $2,080, and the facts are substantially as follows:

[1]Reported in 234 Pac. 11.

In the year 1921, W. E. Sander was the president of the Hill Syrup Company, a corporation, and at the same time he was the principal stockholder, trustee and president of the Hardware Specialties Manufacturing Company. In the months of March and April, 1921, Sander drew checks on the National Bank of Commerce against the funds of the Hill Syrup Company, payable to the American Savings Bank & Trust Company. The checks were cashed by the American Savings Bank & Trust Company and the proceeds thereof deposited to the credit of the Hardware Specialties Manufacturing Company, which had an account at that bank. The Hardware Specialties Company thereafter checked out these funds so deposited to its credit. At the time the checks were cashed by the American Savings Bank & Trust Company, the bank knew that Sander was the president, and that he with his father-in-law were the owners of a controlling interest in such company. The evidence further shows that, at the time the checks were drawn by Sander, the Hill Syrup Company, a corporation, was not indebted to him. On this state of the evidence the trial court decided that, since the defendant bank had never received nor retained to its own benefit any of the proceeds of the checks, and had no notice or knowledge, at the time it paid out the proceeds, that Sander did not have authority from the Hill Syrup Company to direct the deposits of the proceeds of the checks to the account of the Hardware Company, recovery could not be had. Plaintiff appeals therefrom.

The state of facts surrounding the affairs of the Hill Syrup Company and the actions of its former president, W. E. Sander, are detailed very much at length in *Hill Syrup Co. v. Marine National Bank*, 128 Wash. 509, 223 Pac. 595, and *Hill Syrup Co. v. National City Bank of Seattle*, 129 Wash. 171, 224 Pac.

578.  Both cases were decided by Departmental opinions and thereafter the causes assigned for rehearing *En Banc*, the former being overruled, but the opinion in the latter case being adhered to.

The sole question to be decided in this case is whether the circumstances surrounding the cashing of the checks and the deposit of the proceeds thereof to the credit of the Hardware Specialties Company was such as to put the bank upon inquiry.  In other words, was this such a suspicious circumstance that the bank had no right to assume that there was a legitimate transaction between the Hill Syrup Company and the Hardware Specialties Company?

Counsel for appellant insists that because Sander was an officer in each company, that fact is sufficient to show the bank that he was using the money for his own benefit.  Appellant relies upon the case of *Harden v. State Bank of Goldendale*, 118 Wash. 234, 203 Pac. 16, and *Hill Syrup Co. v. National City Bank of Seattle, supra;* but this case does not come within the rule there announced because of the difference in the facts. In the first case cited, the court found that the respondent bank "was doing a banking business and placed that sum of money to Clark's private banking account, and knew that he was checking against such account for his own private ends."  In the second case, Sander was using the money for the payment of his own private account, and we decided that, "it would appear that in each case it was not a matter of being simply sufficient to excite the suspicion of a reasonably cautious person, but, on the contrary, notice was plainly given that Sander was using the money of the corporation of which he was president to pay his private debts to the motor company. . . ."

The facts in this case are wholly different.  It is not an unusual or uncommon thing for corporations to

deal with each other, or to draw checks for the payment of accounts to each other. There was no state of facts upon which the bank had any reason to believe that there was not a *bona fide* indebtedness from one company to the other. There would be no difference in the rights of the parties if Sander, instead of drawing the checks to the American Savings Bank & Trust Company and ordering the proceeds to be placed to the credit of the Specialties Company, had made the check direct to the specialties company and deposited the check to its account. This court has gone a long way to protect the funds of corporations where their officers have attempted to use the funds for their own personal ends, and have even held third persons liable where no financial benefit was gained therefrom. But transactions between corporations are so numerous, and it is such a frequent thing for officers of one corporation to be interested either as officers or stockholders in another corporation, that to hold that the bank at its peril received deposits for one corporation which consist of checks of another corporation drawn by an officer interested in both, is to extend the rule beyond all reason.

Numerous cases are cited by appellant to establish the liability of the bank, but we think this case is controlled by the reasoning in *National City Bank v. Shelton Electric Co.,* 96 Wash. 74, 164 Pac. 933, where we said:

"While it is out of the usual course of business and, therefore, suspicious for a corporation, in the name of its president, to execute a promissory note payable to the president in his individual capacity, it is not at all out of the ordinary for it to execute obligations to third persons, and we fail to see how this situation is altered solely because of the fact that the name of the payee concern includes the name of the president of the maker corporation."

While in that case the president who executed the note was not actually interested in the payee corporation, yet a reading of the opinion will show that fact alone was not controlling.

There being no facts or circumstances sufficient to put the bank upon inquiry or to suggest to it that the money was being used for Sander's personal benefit, it follows that the judgment of the superior court was right and it is affirmed.

TOLMAN, C. J., HOLCOMB, MAIN, BRIDGES, and FULLERTON, JJ., concur.

PARKER, J. (concurring)—I concur in the result reached in the foregoing opinion, but not in the observations therein made which seem to suggest that the bank might be put upon inquiry, under some circumstances, as to what Sander did or was going to do with the Hill Syrup Company money. To my mind, it its enough to relieve the bank of all liability to know, as the record here shows, that it was not receiving from Sander any of the Hill Syrup Company money in payment of any debt or obligation due or owing from him to the bank.