[No. 11253.  Department Two.  September 5, 1913.]

ROSE K. THATCHER, *Respondent*, v. ORILLA CAPECA *etc.*, *et al.*, *Appellants.*[1]

DEEDS—DELIVERY—EVIDENCE—SUFFICIENCY.  There was a sufficient delivery of a deed, found among the grantor's papers after his death, to pass the title to the property, where it appears that the grantor put and allowed the grantee to remain in possession and make improvements, directed in writing the recording of the deed after his death, charged a third person with the duty of recording the deed, and attempted to deliver possession of the deed when death was near.

EXECUTORS AND ADMINISTRATORS — PARTITION OF ESTATE — AGREEMENT—COMMUNITY PROPERTY—PRESUMPTIONS.  There is a partial partition of an estate by agreement, without the necessity of an order of court, where the heirs were adults and the claims of creditors were satisfied, and the administrator of community property, in which he had a one-half interest, turned over to the heirs $52,000, the acceptance of which sum implied an assent by the heirs that he take a like sum in his own right; hence there was no presumption that investments made by him therefrom were made with community funds; nor would the heirs, by reason of his subsequent mismanagement of the balance of the estate, have any claim upon third persons acquiring rights under the partial partition.

[1]Reported in 134 Pac. 923.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered November 22, 1912, upon findings in favor of the plaintiff, in an action to quiet title. Affirmed.

*Farrell, Kane & Stratton* and *L. V. Newcomb,* for appellants.

*Gill, Hoyt & Frye,* for respondent.

FULLERTON, J.—This action was instituted by the respondent against the appellants to quiet title in herself to certain real property, situated in the city of Seattle. She had judgment in the court below, and this appeal is prosecuted therefrom.

The facts giving rise to the controversy are not complicated, nor seriously in dispute. On October 17, 1904, Catherine Stetson, wife of Warren C. Stetson, died intestate, leaving an estate consisting of property held in community with her husband, of a value in excess of $300,000. The appellants other than the appellant L. V. Newcomb are children of Catherine Stetson and Warren C. Stetson, and her heirs at law. Following the death of Catherine Stetson, Warren C. Stetson took out letters of administration on her estate, caused an inventory of the property thereof to be filed and the property to be appraised, but seemingly proceeded no further with the administration in the probate court. The debts of the estate, if anything at all, were inconsiderable. The administrator at no time had a settlement with the heirs, all of whom had reached the age of majority; but, from time to time, he turned over to them, and advanced for their use, moneys which aggregated something over $52,000.

On November 27, 1906, Warren C. Stetson purchased the property here in question, paying therefor $4,400 in cash and assuming a mortgage thereon of $2,600. This mortgage he renewed in his own name some two years later. On December 1, 1906, the respondent entered into the possession of the property, which possession she retained at the time of

the trial of this action. The respondent made some improvements on the property during the time of her possession which she estimated to have cost her some five hundred or six hundred dollars, but Stetson himself paid the taxes and assessments levied against the property during that time, as well as the interest as it accrued upon the mortgage up to the time of his death, which occurred on November 13, 1911.

On May 9, 1910, Stetson executed and acknowledged a warranty deed to the property, subject to the mortgage, in favor of the respondent, which he placed in an envelope, together with the deed to himself for the property, and which he had not theretofore had recorded, writing on the envelope the following instruction:

"Warranty deeds to be held until my demise then put of record, the one to me just before the one from me. To be in care of Miss Julia McFadden. W. C. Stetson."

At the time of executing the deed, which was prepared for him by Miss McFadden, he stated to her his purpose in executing the deed, and gave her instructions to get it and put it of record should anything happen to him, telling her where the deed could be found, and cautioning her not to forget it. Miss McFadden married a Mr. Johnson shortly thereafter and left his employ, although she continued to live in Seattle, and at times, at his special request, performed clerical services for him. Some three weeks preceding his death, Mr. Stetson had Mrs. Johnson called to his home, where he was confined by illness, when he requested her to go to his office and get a tin box in which he kept his valuable papers, reminding her again of the deed and her promise to record it. Mrs. Johnson could not go on that particular day, but promised to go within a day or two. To this he assented, requesting her to go as soon as she could; adding that when she was ready to go, to come by and he would give her the keys. Mrs. Johnson was called away for a couple of weeks without performing the errand, and when she returned she found Mr. Stetson in a comatose condition and unable to

talk, a condition in which he continued until his death a few days later. Prior to Mrs. Johnson's return, however, he called the attention of his housekeeper to his keys and requested that she take them and give them to Mrs. Johnson.

In this court the appellants make two principal contentions: first, that there was no sufficient delivery of the deed to constitute a gift of the property to the respondent; and second, that the property was purchased with the funds belonging to the estate of Catherine Stetson, and hence could not be the subject of a valid gift by Warren C. Stetson.

On the first question suggested, counsel have made an extended argument, and have cited many cases from other jurisdictions bearing more or less closely upon the question involved. These cases, however, we shall not notice, as we think the question is determined by our own cases. In *Atwood v. Atwood*, 15 Wash. 285, 46 Pac. 240, we held that a deed found among the papers of the grantor after his death, where no change of possession was made of the property and where the evidence showed no intent on the part of the grantor to pass title to the property during his lifetime, did not constitute a sufficient delivery of the deed to pass title. Attention, however, was called to the fact that an actual physical delivery of the deed was not necessary to constitute a valid delivery; that it was often a question of intention, and that a deed may become operative even though its manual possession be retained by the grantor. "But in such cases, before the court can find a delivery, the intention to consummate the transaction so as to fully vest the title in the grantee must be clearly shown," and it was found that no such intent appeared in the case then in hand. In *Matson v. Johnson*, 48 Wash. 256, 93 Pac. 324, 125 Am. St. 924, effect was given to the rule conceded in the case of *Atwood v. Atwood, supra,* the court saying:

"What was lacking in the *Atwood* case, viz., the intention to consummate the transaction so as to fully vest the title in the grantee, was, in our opinion, clearly and unequivocally

shown in this case. The will and deed were executed at the same time and as a part of the same transaction. The real property was omitted from the will, no doubt advisedly, and all the surrounding circumstances show conclusively that the grantor intended to convey his real property to these minors, that the deed was executed for that purpose; and in our opinion the mere absence of an acknowledgment is not sufficient to defeat his expressed intentions."

In the case at bar, we think the intention to consummate the transaction and vest in the grantee the full title to the property is clearly and unequivocally shown. The respondent was not only allowed to enter into possession of the premises within a few days after it was purchased by Mr. Stetson, but was allowed to remain in such possession as long as he lived thereafter. She made improvements upon the premises if not with his acquiescence certainly with his knowledge. She paid no rent, nor did she account in any way to him for use of the premises. He made a deed to her for the premises and charged another with the duty of recording the instrument after his death; going so far as to attempt to put that person in possession of the deed when he felt that his death was near. The technical failure of his effort we think should not be allowed to defeat his manifest purpose.

In support of their second contention, the appellants sought to show that Warren C. Stetson, at the time of his wife's death, had no separate property, and they argue therefrom that the land here in question must have been purchased with funds of the estate, and hence was property of the estate which could not be conveyed away by the administrator without the consent of the heirs, or an order of the probate court. But this argument overlooks the fact that Stetson did not stand with relation to this estate on the plane of an ordinary administrator whose sole interest in the property is derived from his appointment as administrator. Upon the death of Catherine Stetson, one-half of the property went to him in his own right, subject only to the community debts, and the expenses of the administration.

When these were satisfied, his title to the one-half became absolute, and he was then entitled to have such portion segregated from the portion of the heirs and set apart to him. In this state it is not essential to a valid partition of property of an estate between the persons entitled thereto that an order of the probate court be had for that purpose. If the heirs are adults, and the claims of creditors be satisfied, a valid partition can be made by agreement. *Griffin v. Warburton*, 23 Wash. 231, 62 Pac. 765. And here we think there was a partition by agreement as to part of the property of the estate. It will be remembered that the administrator turned over to the heirs money in the sum of $52,000. If the estate was intact when this was done, and there is no showing to the contrary, the acceptance of this sum by the heirs implied an assent to the taking by the administrator of a like sum in his own right. And if thereafter the administrator so managed the balance of the property of the estate as to lose the greater part of it, leaving an insufficient amount to make good the full proportion of the heirs, the heirs cannot call upon those acquiring rights under the original partial partition to make good these losses. So in this instance, if Stetson purchased this property with moneys acquired by him on the partial partition, the title of the person to whom he conveyed it is good as against the claim of the heirs. There is no direct evidence on this particular question in the record. The circumstantial evidence is in its favor. The property was purchased shortly after the principal advancement was made to the heirs, and at a time before the estate had suffered any serious financial losses as a result of the administrator's mismanagement.

We conclude, therefore, that the judgment of the trial court should stand affirmed, and it will be so ordered.

MAIN, ELLIS, and MORRIS, JJ., concur.