[No. 16302.   *En Banc.*   January 9, 1922.]

MABEL S. HARDEN *et al.*, *Appellants* v. STATE BANK OF GOLDENDALE, *Respondent.*[1]

EXECUTORS AND ADMINISTRATORS (45, 56)—MANAGEMENT OF ESTATE —PLEDGE OF PROPERTY—POWERS OF EXECUTOR—STATUTES. Under Rem. Code, § 1491, declaring that the property of a decedent's estate shall not be sold or mortgaged except by an order of the court, the personal representative of an estate has no authority to pledge the choses in action of the estate as collateral security without having obtained a court order therefor, and hence the pledgee can obtain no rights in such collateral.

SAME (45)—PLEDGE OF PROPERTY—LIABILITY OF PLEDGEE. Where an executor pledges to a bank to secure his personal debt a note belonging to the estate, and the bank on collecting the note applies a part of the proceeds to the individual checking account of the executor, the bank is liable to the estate for any loss suffered through the misapplication of such moneys.

APPEAL (386)—REVIEW—ESTOPPEL TO ALLEGE ERROR. The refusal of the court to give judgment on a particular claim of indebtedness involved on the trial cannot be urged as error where there was no appeal from such refusal.

Appeal by plaintiffs from a judgment of the superior court for Klickitat county, Darch, J., entered June 15, 1920, upon findings favorable to the plaintiffs, in an action to recover property belonging to an estate, tried to the court. Reversed.

*Miller, Wilkinson & Miller*, for appellants.

*John R. McEwen*, for respondent.

[1] Reported in 203 Pac. 16.

BRIDGES, J.—By this action the plaintiffs sought to recover from the defendant possession of four promissory notes, and mortgages securing the same, or, if the defendant had collected any of the notes, then judgment for the amount so collected. All of these notes were made payable to Ada S. Clark. The makers were Schurtz and wife, Forbes and wife, Peterson and wife, and Yates. At the trial it appeared that the respondent held the Schurtz and Forbes notes and mortgages, but that the Yates and Peterson notes had been collected while in its possession. The court gave judgment requiring the defendant to surrender to the plaintiffs the Schurtz and Forbes notes and mortgages, but refused to give any money judgment against it on account of the notes it had collected. The plaintiffs have appealed because the court refused to give the money judgment.

We find the prevailing and controlling facts to be as follows: On August 10, 1915, Ada S. Clark died, leaving surviving her Harold J. Clark, her husband, and two minor children. The notes and mortgages above mentioned were her separate property. She was also the owner of a community interest in certain real estate and personal property. Her will devised all of her separate property to the Security Savings and Trust Company, a corporation, of Portland, Oregon, in trust for the use and benefit of her two minor daughters, and gave all of her interest in the community property to her husband, and appointed him as executor of the will. Shortly after her death, the husband was appointed and duly qualified as executor. Thereafter he filed in the probate matter an inventory showing that the notes and mortgages above mentioned were the separate property of his deceased wife.

After his appointment and qualification as executor, Mr. Clark, on December 10, 1915, borrowed from the

respondent $1,000 and executed and delivered to it his note as executor for that sum. He also delivered into the possession of the respondent the above mentioned notes and mortgages as security for the loan made to him. Sometime thereafter the executor gave to the respondent his additional note in the sum of $900, and the notes and mortgages theretofore placed with respondent were also to secure this note. The court having charge of the probate proceeding did not at any time authorize the executor to execute the two notes made by him to the respondent, or to turn over to the respondent the notes and mortgages above mentioned, as collateral security. It does not appear that the estate of the decedent ever received any benefit from the moneys borrowed by Mr. Clark, but that, on the contrary, he used all such sums in his own private affairs.

Before the institution of this suit, the Peterson note was paid in full by the maker in the sum of $587.50. It would appear that this money was paid directly to Mr. Clark, who delivered it to the respondent, and the latter then surrendered the note so paid either to Mr. Clark or to the maker thereof, and the amount so paid was credited upon the notes given by the executor. It further appears that, before the suit was instituted, Mr. Yates, maker of one of the other notes, paid the same to Mr. Clark in the sum of $859. Thereupon Mr. Clark took the money to the respondent and the bank then surrendered the paid note either to Mr. Clark or to the maker, and at Mr. Clark's request credited $500 of the money so paid on the notes given by him as executor, and placed to his individual account the balance of the amount so paid, to wit, $359. Some months after these detailed transactions, Mr. Clark died and Mabel S. Harden and Regina Curl were appointed administratrices of the estate of Ada S. Clark, deceased, and they instituted this action.

The estate of Ada S. Clark, deceased, did not obtain any of the moneys collected from the Yates and Peterson notes.

The appellants argue that the respondent is liable for the amounts collected by it on the Yates and Peterson notes, because the court did not authorize the giving of the notes by the executor or the putting up of the estate's notes and mortgages as collateral security. The respondent argues that the title to the notes and mortgages put up as collateral security vested absolutely in the executor, with power to sell or pledge them without any order of the court, and that one taking choses in action as a pledge from an executor takes them as freely as they could from the owner.

The probate code, as it existed prior to the enactment of the 1917 probate code (Laws of 1917, p. 642), is controlling here because the transactions under consideration occurred prior to the passage and going into effect of the 1917 code. Section 1491, Rem. Code, provides that:

"No sale or mortgage of any property shall be valid unless made under order of the court, unless otherwise provided by law."

The respondent contends that this statute does not cover and include choses in action, and that it was not necessary for the executor to obtain the order of the court to place these collateral securities with the respondent. We cannot agree with this contention. In this state an executor or administrator acts only and always in a representative capacity. He has no powers except such as are given by statute. His acts are always under the direction of the court. The statute quoted expressly and plainly says that no property of an estate shall be sold or mortgaged without the order of the court. We cannot see any good reason

for holding that a chose in action should be excepted from its provisions. The reasons which require the executor to obtain the permission of the court to sell or mortgage the ordinary personal property of the estate applies with equal force to choses in action. A promissory note or other chose in action is as much "property" within the meaning of the statute as any other class of personal property. Not only does § 1491 require us to so hold, but the spirit of the whole probate code points unerringly to the same conclusion.

At the common law, executors and administrators took the title to all personal property of the estate, and might sell or mortgage it without order of the court. It is well known that they often took advantage of their powers to the great detriment of the estates they represented. These abuses were as much in the handling of choses in action as any other kind of personal property. By § 1491 the legislature of this state sought to put an end to such practices. It would seem to be an exceedingly narrow construction of the code to hold that the legislature intended to correct the evils as to ordinary personal property but leave choses in action, which usually constitute a large portion of the assets of estates, subject to the very wrongs it was seeking to correct. We construe the statute to mean exactly what it says. Consequently, it must follow that the executor here had no authority to put up as collateral security the notes and mortgages held by him as executor without having obtained the order of the court so to do, and that the respondent could not thereby obtain any rights as to the notes or the proceeds thereof. We do not mean to hold that the court must, in the first place, make its order authorizing the sale or mortgage. If an executor mortgage or sell personal property without first obtaining the order

of the court, and the estate derives benefit therefrom, and the court afterwards approve the executor's acts, it may be that the proceeding is legal. But such is not the situation here, and we are not called upon to decide that question.

It must be conceded that there are a number of excellent cases and authorities which seem to support the respondent's contention. Some of these are: 11 Am. & Eng. Ency. Law (2d ed.), 1010; *Weider v. Osborn*, 20 Ore. 307, 25 Pac. 715; *Smith v. Ayer*, 101 U. S. 320. In the case of *Weider v. Osborn, supra,* the Oregon supreme court elaborately discusses the question and cites most of the authorities in support of its view. Some of the cases holding to the contrary view are: *Winningham v. Holloway,* 51 Ark. 385, 11 S. W. 579; *Pierce v. Batten,* 3 Kan. App. 396, 42 Pac. 924; *Smith v. Griffin,* 32 Ga. 81; *Wickersham v. Johnston,* 104 Cal. 407, 38 Pac. 89, 43 Am. St. 118; 18 Cyc. 358-359. We prefer to follow the rule of the cases last cited, because they are in accord with the express wording and the spirit of our probate code.

Respondent, in any event, objects to judgment against it in the whole amount collected on the Yates note, because it retained only $500 of that amount and paid the balance, to wit, $359, to Clark, who was the executor. But the testimony shows that the respondent was possessed of such facts as required it to learn and know that Clark, as executor, gave the notes and put up the collateral security belonging to the estate solely for his own advantage, and that the estate did not, nor was it contemplated that it would, obtain any benefit whatever from the transaction. It is true respondent did not obtain the benefit of the $359, but paid it directly to Mr. Clark. But respondent was doing a banking business and placed that sum of money

to Clark's private banking account, and knew that he was checking against such account for his own private ends. With all of this information at hand, the respondent must be held liable for the whole amount it collected from the collateral which it unlawfully held. Manifestly respondent considered that the executor had a lawful right to put up these notes as security, and that it was under no obligation to inquire as to what disposition was made of the money collected therefrom, consequently it was free from intentional wrong, but it must bear the burdens resulting from its mistaken judgment.

The appellants have asked judgment for a certain amount collected on what has been called the Dayton note. We do not consider this claim because they did not appeal from the refusal of the court to give judgment on that instrument.

The trial court is directed to enter judgment against the respondent and in favor of the appellants in the sum of $1,446.50, together with interest from the dates of the collection by the respondent of such amount.

PARKER, C. J., MACKINTOSH, FULLERTON, MAIN, TOLMAN, MITCHELL, and HOVEY, JJ., concur.

HOLCOMB, J., concurs in the result.