[No. 31514. Department Two. March 15, 1951.]

*In the Matter of the Estate of* MARY WILLIAMSON, *Deceased.*[1]

[1]Reported in 229 P. (2d) 312.

*Dalton & Bibb,* for appellants.

*Emory, Howe, Davis & Riese,* for respondent Seattle-First National Bank.

*Catlett, Hartman, Jarvis & Williams,* for respondent Catlett.

*Montgomery, Montgomery & Purdue,* for respondent Purdue.

GRADY, J.—This appeal involves matters in controversy between life beneficiaries of trusts set up in the will of Mary Williamson and minor remaindermen of such trusts.

Mary Williamson made a nonintervention will June 7, 1946. She died October 1, 1946. Three adult children, Julia A. Miller, John W. Williamson, and William B. Williamson, survived her. They are the life beneficiaries of the trusts set up in her will. Mary Williamson also left surviving three minor grandchildren, who, under the terms of the will, ultimately acquire the property held in trust for their respective fathers, John W. Williamson and William B. Williamson. The testatrix appointed Julia A. Miller, her daughter, Darrell W. MacDonald, and Seattle-First National Bank, executrix and executors of her will, and also trustees of her estate. She devised and bequeathed two thirds of her property to Julia A. Miller, Darrell W. MacDonald, and Seattle-First National Bank in trust for two of her children, Julia A. Miller and John W. Williamson. The will provided that upon the death of either child, leaving a child or children surviving, his or her share of the trust property should go to his or her children in equal shares and be held in trust until the youngest reached the age of majority. Two children of John W. Williamson and one child of William B. Williamson, in anticipation of ultimate succession to their respective father's interests, have appeared by guardians

*ad litem* and contested the manner in which trust funds were expended in so far as their expectancies may have been diminished or depleted. The remaining one third of the property was devised and bequeathed to Julia A. Miller and Seattle-First National Bank in trust for the other son, William B. Williamson. The will provided for the administration of the estates by the executors without the intervention of the court, and that all rents, issues, and profits derived from the estate, as well as the proceeds from the sale of real or personal property, and all increment of the same, should be held and managed by the executors, as trustees, for the persons, uses and purposes mentioned therein.

It will thus be seen that, during the time the estate was in probate, Julia A. Miller, Darrell W. MacDonald, and Seattle-First National Bank acted in a dual capacity. They were executors of the will and of the entire estate, charged with the performance of those duties prescribed by the nonintervention will and applicable statutes. During such time they also acted as trustees and held and managed the income from the property as directed by the will. In their respective capacities they were authorized to sell real or personal property. The trustees were directed to pay monthly to John W. Williamson and Julia A. Miller so much of the income of the trust as should not be required for the payment of taxes, repairs, insurance and other charges that might be necessarily incurred in the prudent management of the estate, including such reasonable amount as the trustees might determine necessary to keep on hand to provide for unforeseen expenses.

The plan of the testatrix for her son William B. Williamson was somewhat different from the one made for John and Julia. A one-third share of the estate was devised and bequeathed to Julia A. Miller and Seattle-First National Bank to be held in trust for him. Darrell W. MacDonald was not named as a trustee. The two trustees were given substantially the same authority as the three trustees had as to management, sale and investment. They were authorized to pay such portion of the income or the principal of the property to William B. Williamson at such times and in such amounts

as they, in their sole, absolute, and uncontrolled discretion might determine most beneficial to him; or if they, in their discretion, deemed it more beneficial to him, they might provide for his support and maintenance from the income or principal of the property held in trust for him. The trustees were further authorized and empowered to pay to William B. Williamson, in addition to the aforesaid amounts, at any time after he attained the age of forty years, such portion of the unexpended income or principal of the trust property as in their uncontrolled judgment and discretion they considered would be most beneficial to him.

The testatrix directed that her executors pay all of the legacies when funds should be available for that purpose, but directed that a reasonable amount of cash should at all times be kept on hand to provide for the payment of taxes, repairs and other carrying charges that might be required to be paid in the prudent management and conservation of her estate. She expressly directed that none of her property, real or personal, should be sacrificed or sold for the purpose of paying the bequests, or any of them, unless such property could be sold, in the judgment of the executors and trustees, at a fair and reasonable price. The will contains no specific bequests of money or other property, and the legacies and bequests referred to necessarily relate to the income derived from real and personal property.

On October 21, 1946, the will of Mary Williamson was admitted to probate. The real and personal property set forth in the inventory filed by the executors was appraised in the sum of $211,957.84. United States savings bonds issued in joint name in the sum of $49,992.87 were listed for inheritance tax purposes only. The estate was adjudged solvent April 1, 1947.

On September 22, 1949, the executors filed their final account and petition for distribution. Later, other accounts were filed. The court appointed guardians *ad litem* for the minor grandchildren. Hearings were had, and at the termination of them the court decreed (a) that Julia A. Miller, William B. Williamson and John W. Williamson (referred to as life beneficiaries) were not entitled to have paid to

them income accruing from date of death of the decedent, but from date of the decree of distribution; (b) that the expenses of estate administration should be chargeable to and paid out of income; (c) that the Federal estate tax be apportioned between the corpus of the estate and the income therefrom; (d) that it was not proper for the executors to pay a family allowance to the three adult children of the decedent, and (e) that the guardians *ad litem* should each be paid out of the corpus of the estate the sum of one thousand dollars as partial compensation for their services in representing the minor remaindermen.

In so far as this appeal is concerned, the interests of the life beneficiaries and the questions they raise and present are in common, and the same is true of the remaindermen. We shall refer to the former as appellants and to the latter as respondents. The executrix and executors will be referred to as executors. We have set forth only such parts of the decree as furnish the grounds of appeal.

The will of Mary Williamson was prepared with great care by one who, it is very apparent, knew and understood what the testatrix had in mind, the objectives she desired to attain, the law with reference to the powers and authority that might be given to executors under a nonintervention will and those given to them by statute, as well as those that might be given to testamentary trustees. The testatrix had a clear and definite plan as to what she wanted done with and about her property after her death, and in plain, concise and easily understood language such plan has been portrayed. Because of this we are not called upon to determine and apply rules of interpretation and construction as in the case of an ambiguous instrument where conflicts arise as to the intention of a testatrix. Rem. Rev. Stat., § 1415 [P.P.C. § 219-39]; *Bank of California, N. A. v. Ager*, 7 Wn. (2d) 179, 109 P. (2d) 548; 57 Am. Jur. 719, Wills, § 1124.

In our consideration of the questions raised and discussed and the authorities cited by counsel in their briefs, we must have in mind our statutes relating to nonintervention wills (Rem. Rev. Stat., §§ 1462, 1463), the authority given to executors thereunder and the limitations placed upon the juris-

diction of the court; also the right of a testator to give, devise and bequeath his property to trustees and to direct how it shall be handled and its disposition.

The will before us being plain and unambiguous, we find no difficulty in arriving at the intention of the testatrix. We have considered it as a whole and have given effect to each and every part thereof. The grants of power and authority to the executors and to the trustees are broad, and limitations or restrictions are few. The will may be said to speak in the affirmative rather than the negative. This being the situation, we find many of the authorities cited in the briefs do not apply, though they may refer to established principles of law.

(a) and (d) The question involved under these parts of the decree is whether the trustees had the authority to pay to the appellants income derived from property during the time the estate was in the process of probate administration. The theory of respondents is that the trustees, during that period of time, had authority only to receive the income and retain it until a decree of distribution was entered, and it was not until thereafter the payments of income to appellants could be made.

We find nothing in the will postponing the payment of income to appellants until after a decree of distribution was entered. In the absence of such a postponement, it became the duty of the trustees to commence to pay income to appellants as soon as any was available from the estate and trust property. We are convinced from the provisions of the will that if the testatrix had intended to deprive appellants of the benefit of the income while the estate was in the process of probate, she would have affirmatively so provided. Instead, she appointed trustees and started the trusts to operate immediately after her death.

In the cases of Julia A. Miller and John W. Williamson, the first call upon income is for the payment of taxes, repairs, insurance and all other charges necessarily incurred in the prudent management of the estate, as well as the maintenance of a fund to meet unforeseen expenses. In the

case of William B. Williamson, his trustees are directed to pay to him such portion of the income or the principal of the trust as in their discretion they may deem most beneficial to him.  It necessarily follows that, before income or principal can be paid to him, taxes, etc., must be paid.  The payment of income is also subject to the same contingencies provided for in the other trust.  There may be some room for a difference of opinion as to whether the income accruing during the period of probate administration should be paid during such period, or be allowed to accumulate and then paid when the estate is closed and a decree of distribution entered.

In the case of an ordinary will, even though there be a dual administration and trusteeship, the executors might have such right of possession and control over the income as to enable them to hold it as a part of the estate funds and out of it defray and pay such items as taxes, insurance and necessary expenses in the upkeep of the income property; but under a nonintervention will setting forth such a plan as appears in the will before us, the right to receive income from the death of the testatrix becomes apparent.  Authority for all that we have just stated is set forth by such texts as Scott on Trusts 1277, § 234; 4 Bogert on Trusts and Trustees 155, § 811; 4 Page on Wills 526, § 1591; Restatement of the Law of Trusts 692, § 234; 54 Am. Jur. 92, Trusts, § 100; 69 C. J. 784, Wills, § 1887.  This subject is treated in 70 A. L. R. 637, 105 A. L. R. 1194, and 158 A. L. R. 442, 443.  The author in the latter citation states the rule to be as follows:

"The general rule is that when property is devised or bequeathed in trust to pay the income to a person for life, or for a limited time, he is entitled to such income from the date of the death of the testator, unless the testator has indicated an intention that the income shall not begin until a later date."

In *Davis v. Brown,* 112 Wash. 121, 191 Pac. 1098, we recognized the general rule to be that where a bequest is made of income it is payable from the time of the testator's death.  The will before the court in that case had the words therein "from and after my death," but the court pointed out that the dominant note of the will showed clearly that the tes-

tator was especially concerned with the income of his estate and took great pains to provide for its disposition with such exactness and in such detail that his intention could not be doubted. We think the same may be said of the will now before us.

In order that the appellants might be assured of financial assistance from the estate while it was in probate, the executors secured an order of the court making a family allowance to them pursuant to Rem. Rev. Stat., § 1476 [P.P.C. § 205-7]. The amount of the allowance was paid out of income. In view of our conclusion that appellants were entitled to have income paid to them from the death of the testatrix, the questions whether Rem. Rev. Stat., § 1476, applies to a nonintervention will, and whether the "family" includes adult children not residing together as a family unit become moot.

▐ (b) In order to determine the source from which funds were to be derived for the payment of expenses of estate administration, we again look to the will. The testatrix gave no direction in her will with reference to the payment of expenses of administration of her estate, nor to any fund or property out of which such expenses should be paid. The testatrix regarded income from her property available to be paid to her respective children as legacies. Rem. Rev. Stat., § 1507 [P.P.C. § 213-31], authorizes payment of expenses of administration out of legacies only in the event there shall not be other sufficient estate. The trustees were directed to pay income to the named legatees other than that which was directed to be withheld for the prescribed purposes. This direction excludes the idea that the testatrix contemplated that expenses of administration should be paid out of income. The intention of the testatrix, coupled with the statute, made it mandatory that the expenses of administration be paid out of the corpus of the estate. We have found no case in this state deciding this precise question. Having reached the conclusion that both the will and the statute contemplate payment of administration expenses out of the corpus of the estate, it would seem that reference to authority would be unnecessary. However, reference may

be made to 33 Am. Jur. 946, Life Estates, § 424; 135 A. L. R. 1322, and *Estate of Schiffmann,* 86 Cal. App. (2d) 638, 195 P. (2d) 484. The author of the annotation in 135 A. L. R. 1322 states the rule as follows:

"The courts have generally adopted the rule that, at least in the absence of a contrary intention disclosed in the will, or circumstances which, in order to give effect to the controlling purpose of the testator, call for the application of a contrary rule, the expenses of administering the estate prior to the establishment of the trust, and the fees of the executor or of attorneys for the estate, for services rendered in the administration of the estate prior to the establishment of the trust, are chargeable to the corpus of the estate, which is ultimately to form the trust, and not to its income accruing during the period of administration preceding the establishment of the trust."

██ (c) The decree of distribution apportioned the Federal estate tax between the life beneficiaries and the remaindermen according to the value of their interests as computed by mortality tables. There is no statute in this state directing the apportionment of the Federal estate tax, such as Rem. Rev. Stat. (Sup.), § 11205 [P.P.C. § 974-35], which provided for the apportionment of inheritance taxes. The will does not provide for any apportionment of that tax. The testatrix having made complete disposition of the income from the estate property, it necessarily follows, as in the case of expenses of administration, that the Federal estate tax must be paid with funds derived from the corpus of the estate.

The Federal estate tax is a tax upon the transfer of a decedent's property at his death upon the entire estate, and is payable as an expense of administration. An inheritance or succession tax is one upon the taking of property by beneficiaries or distributees. *Seattle-First Nat. Bank v. Macomber,* 32 Wn. (2d) 696, 203 P. (2d) 1078; *Y.M.C.A. v. Davis,* 264 U. S. 47, 68 L. Ed. 558, 44 S. Ct. 291. We think our conclusion that the estate tax must be paid out of corpus could properly be based solely upon the absence of a controlling statute and what we consider to have been the intention of the testatrix, but there is supporting authority to the same

effect. In 28 Am. Jur. 136, Inheritance, Estate and Gift Taxes, § 279, the author states:

"An estate tax is not payable by legatees or out of legacies as such, but is payable out of the corpus of the estate. Thus, the estate tax imposed by act of Congress is upon the entire estate and not upon the particular devise, bequest, or distributive share of the individual beneficiary."

We discussed the principle of apportionment of the Federal estate tax in the *Macomber* case, *supra,* and the idea to be gathered from the case is that, in the absence of statute or direction by the testator to the contrary, the burden of Federal estate taxes is not upon income, but is upon the corpus of the estate.

(e) We are not in accord with the view of appellants that the allowance of fees in partial compensation for the services of the guardians *ad litem* was excessive. When consideration is given to the legal and factual questions involved in the due and proper representation of the minor remaindermen and the able and painstaking efforts on the part of the guardians *ad litem,* we have no hesitancy in saying that the partial allowance was very reasonable, and we give the action of the trial court our approval.

We remand the case for a modification of the decree. of distribution in accordance with the views expressed in this opinion. Neither party shall recover costs or disbursements in this court.

SCHWELLENBACH, C. J., ROBINSON, MALLERY, and HAMLEY, JJ., concur.