**UNITED STATES v. MERRILL.**
No. 13390.

United States Court of Appeals
Ninth Circuit.
March 2, 1954.

Pope, Circuit Judge, dissented.

H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Thomas R. Winter, Fred Youngman, Helen Goodner, Audley J. Godfrey, Jr., Sp. Assts. to Atty. Gen., Charles P. Moriarty, U. S. Atty., Seattle, Wash., for appellant.

Wright, Innis, Simon & Todd, Seattle, Wash., for appellee.

Before HEALY, BONE and POPE, Circuit Judges.

BONE, Circuit Judge.

Appellee brought this action for refunds of income taxes paid by him for the taxable years 1939 and 1940. The facts are undisputed. Appellee's wife died testate in the State of Washington on April 9, 1939. In her will, which was of the non-intervention type, she named appellee as executor and bequeathed her one-half interest in the community property, after payment of certain minor bequests to appellee in trust to pay the income to himself for life.

After the will was admitted to probate on April 21, 1938, appellee immediately separated the community property into two equal parts and carried only his deceased wife's one-half share of this property in his books of account as executor. He carried the other one-half of the community property in a separate set of books as his individual property.

On November 22, 1939 the probate court entered a decree of distribution directing that the estate be distributed one-half to appellee as "his community interest" and the other one-half, after payment of the minor bequests, to himself as trustee in accordance with his wife's will. The decree further authorized a payment of $20,000 to appellee as executor's fees.

Thereafter and on December 23, 1939 appellee paid himself $12,500 as part of his executor's fee from his wife's segregated one-half share of the community property. He reported this amount as income in his individual income tax return for 1939 and paid the tax thereon.

On December 10, 1940 appellee received the remaining $7500 due him as executor's fee, again out of his wife's segregated one-half share of the community property. Subsequently an Internal Revenue Agent who was investigating the estate tax return filed by appellee as executor informed appellee that only one-half of the executor's fee could properly be deducted from the wife's estate for federal estate tax purposes. Appellee paid the estate tax in accordance with this advice. After consulting with an accountant, appellee on December 31, 1940 made entries in his personal books of account and the books of the estate so as to show an indebtedness by him to the wife's estate of $10,000—the amount which had been erroneously paid him as executor's fees out of his wife's share of the community property. These accounts were thereafter balanced by a cash payment by appellee to the trust estate in August of 1943.

Appellee did not report the $7500 received by him as executor's fee in 1940 in his income tax return for that year. Subsequently an Internal Revenue Agent recommended a deficiency assessment based upon appellee's failure to report this amount as income, and appellee thereupon paid the tax alleged to be due. He filed timely claims for refund of the income taxes paid by him on $2500 of the $12,500 he received as executor's fees in 1939, and all of the income taxes paid on the $7500 he received in 1940. This suit followed, and the court below awarded the refunds claimed.

 In Washington the entire community property is subject to administration on the death of one of the spouses, and to the community debts and expenses of administration. See Commissioner of Internal Revenue v. Larson, 9 Cir., 131 F.2d 85, and cases cited in footnote 2 thereof; Thatcher v. Capeca, 75 Wash. 249, 253–254, 134 P. 923. In the instant case the entire $20,000 executor's fee was originally paid out of the deceased wife's segregated one-half share of the community property. As both parties concede, this was a mistake,

since only one-half ($10,000) of the fee was properly chargeable against the deceased wife's share of the community property. The court below apparently took the view that, by virtue of the above noted 1940 bookkeeping entries adjusting the mistaken overpayment of $10,000 from the wife's estate, and the subsequent payment of that amount by appellee to the trust set up pursuant to the wife's will, the $20,000 executor's fee was, in effect, charged one-half against the deceased wife's one-half share of the community property and one-half against appellee's share as surviving spouse. This would seem to be a correct interpretation of what was accomplished by the transaction.

The sole question on which this case was decided in the court below was whether, when a wife dies in the State of Washington and the surviving husband serves as executor of her estate, an executor's fee paid to the husband from community funds is taxable in its entirety to him. Appellee contended, and the trial court agreed, that since one-half of the executor's fee paid appellee was chargeable against his own share of the community property, to that extent the fee did not constitute income to him.

The court below relied upon Bishop v. Commissioner, 9 Cir., 152 F.2d 389. In that case we held that upon the death of a husband domiciled *in California*, (1) only one-half of the income from community property during the period of administration was taxable to the deceased husband's estate, the other one-half being taxable to the surviving wife; and (2) the wife, who received a fee as executrix from community funds, was taxable only upon one-half thereof, the other half having been paid from the wife's own share of the community property (the precise problem involved here). The decision was grounded on the proposition that under California community property law a surviving wife is the *owner* of a one-half share of the community property during the period of administration of her husband's estate. We referred to California stat-

utes providing that husband and wife have "present, existing and equal interests" in the community property, and that upon the death of either spouse, one-half of the community property "belongs" to the survivor. 152 F.2d at page 390, quoting section 161a, Cal.Civ.Code, and section 201, Cal. Probate Code.

Appellant relies upon Commissioner v. Larson, 9 Cir., 131 F.2d 85. In that case we held that income from *Washington* community property in the hands of the executor of a deceased husband's estate was taxable in its entirety to the estate, and that no part thereof was taxable to the surviving wife. Appellant correctly argues that the theory adopted by us in the Larson case, if followed here, would require a reversal. For if, as that case holds, the deceased wife's estate—a separate taxable entity [1]—embraces the whole of the community property for income tax purposes, it follows that expenditures, including executor's fees, made to the surviving spouse from community funds must be allowed the estate in full as deductions,[2] and must be held

taxable in full as income to the surviving spouse. Appellee suggests distinctions between the facts of the instant case and those of the Larson case, but none, we think, are significant.[3]

In the Bishop case we distinguished the Larson case on the ground that the law of Washington, as interpreted by us in the Larson case, made the executor of the estate of a deceased spouse the "owner" of income from all of the community property during the period of administration. The Larson case, having been decided on the basis of Washington law, would appear to be controlling in favor of appellant. Appellee, however, argues that, despite what is said in the Bishop and Larson cases, there is actually no difference in the pertinent laws of Washington and California, that the Larson and Bishop cases are therefore in conflict, and that the latter case should be followed.

■ We are forced to agree with appellee that there is no real difference between the law of California and that of

---

1. 26 U.S.C.A. Secs. 161, 162; Anderson v. Wilson, 289 U.S. 20, 27, 53 S.Ct. 417, 77 L.Ed. 1004; Jones v. Whittington, 10 Cir., 194 F.2d 812, 817.

2. Executors' fees may be deducted by estates for income tax purposes, provided the same expenses are not also claimed as deductions on estate tax returns. Bingham's Trust v. Commissioner, 325 U.S. 365, 374, 376, 65 S.Ct. 1232, 89 L.Ed. 1670; Revenue Ruling 240, 1953, Prentice-Hall. Fed.Tax Service, Sec. 76,408; 26 U.S.C.A. § 162(e).

3. Appellee points to the fact that the decedent's will was of the non-intervention type and that it made an express bequest of income. Appellee asserts that under state law expenses of administration cannot be paid out of income in such circumstances. In re Williamson's Estate, 38 Wash.2d 259, 265, 266, 229 P.2d 312. The argument, as we understand it, is that since the executor's fee in question could not have been paid out of income it could not have been claimed as a deduction for income tax purposes, and therefore it should not be held taxable to appellee. The argument is not well founded. First of all, the decedent's will could only have affected the one-half of

the community property and income therefrom over which she had power of testamentary disposition. The prohibition against payment of expenses out of *income*, therefore, would seem to concern only the income from the decedent's half of the community property. And appellee concedes that he is taxable upon the one-half of the executor's fee which is chargeable against that share of the property. Moreover, the fact that expenses are payable only out of the corpus under state law goes only to the question as to the amount of income "payable to" or "to be distributed to" the beneficiaries under 26 U.S.C.A. § 162(b) and, therefore, the amount upon which the beneficiaries, as distinguished from the estate, will be held taxable. The estate could claim the deduction for expenses of administration to diminish the taxable income of the estate which is not payable to the beneficiaries even though, by state law or the decedent's will, such expenses are only payable out of the corpus. See Bryant v. Commissioner, 4 Cir., 185 F.2d 517; Baltzell v. Mitchell, 1 Cir., 3 F.2d 428; Anthony v. Commissioner, 9 T.C. 956; 6 Mertens Law of Federal Income Taxation Sec. 36.41a.

Washington for purposes of the present problem. As has been observed by the Supreme Court of the United States, a husband and wife in Washington (as in California) have vested, equal, undivided interests in the community property. Poe v. Seaborn, 282 U.S. 101, 111, 51 S.Ct. 58, 75 L.Ed. 239; see In re Coffey's Estate, 195 Wash. 379, 382, 81 P.2d 283; Commissioner of Internal Revenue v. Larson, supra, 131 F.2d at page 87. The Washington statute dealing with the disposition of community property on the death of one of the spouses reads as follows:

"Upon the death of either husband or wife, one-half of the community property *shall go* to the survivor, subject to the community debts, and the other half shall be subject to the testamentary disposition of the deceased husband or wife, subject also to the community debts. * * *" (Emphasis ours.) Remington's Revised Statutes of Washington, Sec. 1342.

Under the decisions of the Supreme Court of Washington the words "shall go" in the quoted statute mean simply that a spouse's share of the community property *shall continue to belong* to such spouse on the death of the other member of the marital community, as is the case in California. In the case of In re Coffey's Estate, 195 Wash. 379, 382, 81 P.2d 283, 284, the Court said: "The interest of the wife in the community estate in this state is not a contingent or expectant interest, but a present, undivided, one-half interest. [Omitting citations.] No new right or interest is generated in the wife by the death of her husband; his death merely affords the occasion for the termination of the husband's interest in the community estate." See also Wittwer v. Pemberton, 188 Wash. 72, 76, 61 P.2d 993, 65 P.2d 218; Redelsheimer v. Zepin, 105 Wash. 199, 177 P. 736.

That the surviving spouse's share of the community property is not a part of the estate of the deceased spouse under Washington law—that it simply "continues to belong" to the survivor—has been recognized by this court for purposes of applying the federal estate tax. Lang's Estate v. Commissioner, 9 Cir., 97 F.2d 867.

In Washington the entire community property is subject to administration on the death of one of the spouses and is subject to the community debts and expenses of administration. See Commissioner v. Larson, supra, and the cases cited in footnote 2 thereof; Thatcher v. Capeca, 75 Wash. 249, 253–254, 134 P. 923. But the same is true under California law where the husband predeceases the wife, as we noted in the Bishop case. 152 F.2d at page 390, quoting Sec. 202 of the California Probate Code; see In re Coffee's Estate, 19 Cal.2d 248, 120 P.2d 661.

It appears, then, that the Bishop case cannot be distinguished from the Larson case on the basis of differences in the laws of Washington and California. As noted, the conflict between those cases is on the question whether the estate of the deceased spouse should be regarded for income tax purposes as embracing the whole of the community property, as the Larson case holds, or whether the surviving spouse is the proper taxable person with respect to one-half thereof, as held in the Bishop case. On this question we think the Bishop case was correctly decided and is controlling here. The Larson decision was based in part upon the view that in Washington an executor has title to the personal property in his charge, a view which the late Washington decisions indicate is erroneous. In re Turner's Estate, 191 Wash. 145, 148–149, 70 P.2d 1059; In re Verchot's Estate, 4 Wash.2d 574, 582, 104 P.2d 490; see also In re Fort's Estate, 14 Wash. 10, 44 P. 104; Harden v. State Bank of Goldendale, 118 Wash. 234, 203 P. 16. And in the Larson case we gave undue emphasis to the powers of the executor of the estate of a deceased spouse with reference to the community property and the income therefrom during the period of administration, and insufficient attention to

the community property law of the state. The Larson case was stripped of its force by the reasoning of the Bishop case and should not be followed.

■ As we recognized in both Larson and Bishop, the question as to who is taxable upon income depends upon who is the owner of the income, and that for purposes of determining ownership, the community property law of the state of the domicile is controlling. Poe v. Seaborn, supra. As noted above, the law of Washington is that on the death of one member of the marital community the surviving spouse *continues to own* a one-half share of the community property. Such share is not a part of the decedent's estate. See Redelsheimer v. Zepin, supra; Wittwer v. Pemberton, supra. For practical reasons the survivor's share is subject to administration along with that of the decedent, but, to borrow the words of Judge Holmes of the Fifth Circuit, the indefeasible title of the survivor does not pass into an eclipse pending the settlement of the decedent's estate. Henderson's Estate v. Commissioner, 5 Cir., 155 F.2d 310, 312, 164 A.L.R. 1030. His interest is the same as it was prior to his wife's death, and he, not the estate, is the proper taxable person with respect to such interest.

The Court of Appeals for the Fifth Circuit now appears to be in accord with the view we have expressed. In Henderson's Estate v. Commissioner, supra, the court held that an executor is taxable upon only one-half of the income from Louisiana community property and that the surviving spouse is taxable upon the other half. We see no significant difference between the pertinent community property law of Louisiana, as explained in that opinion, and that of Washington. The same court later reached a like conclusion where Texas community property law was involved, and where the wife predeceased the husband. Blackburn's Estate v. Commissioner, 5 Cir., 180 F.2d 952. The first case on the question in that circuit, Barbour v. Commissioner, 5 Cir., 89 F.2d 474, held to the contrary where a husband in Texas predeceased the wife. That case has not been overruled, but a concurring opinion in the Blackburn case suggests that the Barbour case is inconsistent with the later decisions and was wrongly decided. The Tax Court regards the Barbour case as without vitality, and has now reverted to the view expressed in the Bishop case and approved by us in the instant case, a course which it followed before the Barbour decision. See Estate of J. T. Sneed v. Commissioner, 17 T.C. 1344.

We conclude, then, that the lower court was correct in holding that a surviving husband is taxable only upon one-half of an executor's fee paid him from community funds. Only one-half of such fee is chargeable against the wife's estate. The remainder is chargeable against the surviving husband's own share of the community property, and to that extent it does not constitute income to him. Bishop v. Commissioner, supra.

As indicated in our statement of the facts, appellee received $12,500 of his executor's fee in 1939 and the remaining $7500 thereof in 1940. Both payments were made out of the deceased wife's segregated one-half share of the community property. At the end of the year 1940 appellee made entries in the books of the estate and in his personal books to show an indebtedness by him to the estate of $10,000, the amount which had been erroneously paid him from the deceased wife's share of the property. This amount was repaid in cash by appellee in 1943 to the trust estate set up pursuant to the wife's will.

■ Though the point was not raised or argued in the court below, appellant here argues that appellee received the entire $20,000 fee out of his wife's estate under a "claim of right" in the years 1939 and 1940 and is therefore taxable on the full amount of the respective sums actually received by him during those years, despite the fact that $10,000 of that amount was received out of his wife's estate as a result of a mistake and was repaid in a later year.

Appellee contends that this question cannot be raised for the first time on this appeal. However, the pertinent facts are stipulated and the question is purely one of law. We think it should be noticed.[4]

The case of North American Oil Consolidated Co. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; gives the most oft-quoted statement of the "claim of right" rule:

"If a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." 286 U.S. at page 424, 52 S.Ct. at page 615; see also United States v. Lewis, 340 U.S. 590, 71 S.Ct. 522, 95 L.Ed. 560; United States v. Lesoine, 9 Cir., 203 F.2d 123.

In the instant case appellee received an overpayment of $2500 from his deceased wife's estate in 1939. The mistake was not discovered until 1940 and the sum was not repaid until 1943.

Appellee would avoid the effect of the "claim of right" doctrine by invoking the rule of Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, that embezzled funds do not constitute taxable income. The argument is that since appellee without right appropriated funds in his possession as executor to his own use, the transaction may be likened to an "embezzlement." We think not. There was no embezzlement. Appellee acted in a double capacity. As executor he paid the funds to himself, as an individual, under an honest mistake. As an individual he received the funds under a good faith claim of right. He must therefore be held taxable upon the $2500 he erroneously received from his wife's share of the community funds in 1939.

A different problem is presented, however, with respect to the $7500 in executor's fees which were mistakenly paid out of the wife's share of the community property in 1940. For as to that part of the fee, the mistake was discovered in the same year as the sum was received (1940) and appropriate adjustments were made in his own books and

---

4. Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037; United States v. Dakota Tractor & Equipment Co., 8 Cir., 125 F.2d 20, 25; Black Motor, Inc. v. Commissioner, 6 Cir., 125 F.2d 977, 980; Commissioner of Internal Revenue v. Celanese Corp., 78 U.S.App.D.C. 292, 140 F.2d 339, 342; Commissioner of Internal Revenue v. Wells, 6 Cir., 132 F. 2d 405; Bates Valve Bag Corp. v. Higgins, 2 Cir., 157 F.2d 886. Appellee relies upon United States v. Waechter, 9 Cir., 195 F.2d 963, but that case was quite different. There the question sought to be raised for the first time on appeal *required a determination of fact on which no evidence had been taken in the trial court.* Appellee further asserts that if the question here under consideration had been brought to his notice in the court below, he would at that time have filed a claim for refund of taxes for the year 1943 based upon the loss sustained by him in repaying the $10,000 to his wife's estate in that year. (Under North American Oil v. Burnet, 286 U.S. 417, 424, 52 S.Ct. 613, a deduction is allowed for repayment of funds received under a claim of right in the year in which the repayment is made.) We are told that the statute of limitations has, since the trial, become a bar to the filing of a claim for refund for the taxable year 1943, and that it would therefore be unjust for this court to now notice the "claim of right" question. The argument proceeds on the assumption that a seven-year statute of limitations would have been applicable, but that is not the case. The seven-year limitation period applies only where the claim for refund involves the deductibility of a bad debt or of a loss from worthlessness of a security. 26 U.S.C.A. § 322(b) (6); Income Tax Reg. Sec. 39.322–9. The deduction to which appellee claims he was entitled was of neither of those types. *Any claim for refund appellee might have had was barred when the action was commenced in the court below.* 26 U.S. C.A. § 322(b) (1); Income Tax Reg. Sec. 39.22–7. Appellee was therefore in *no way prejudiced by appellant's failure* to raise the "claim of right" question in the lower court.

those of his wife's estate *in that year* **in** recognition of the mistake. We think the $7500 receipt in 1940 was thereby placed outside the operation of the "claim of right" rule. That rule is founded upon the proposition that, when funds are received by a taxpayer under claim of right, he must be held taxable thereon, for the Treasury cannot be compelled to determine whether the claim is without legal warrant, and repayment of the funds in a later year cannot, consistently with the annual accounting concept, justify a refund of the taxes paid. United States v. Lesoine, supra, 203 F.2d at page 126, and cases there cited. The usual case for application of the rule involves a taxpayer who has received funds during a taxable year, *who maintains his claim of right thereto during that year,* and who subsequently, in a later year, is compelled to restore the sum when his claim proves invalid.[5] We are not aware that the rule has ever been applied where, as here, in the same year that the funds are mistakenly received, the taxpayer discovers and admits the mistake, renounces his claim to the funds, and recognizes his obligation to repay them. Cf. Carey Van Fleet, 2 B.T.A. 825; Curran Realty Co. v. Commissioner, 15 T.C. 341. We think there is no warrant for extending the harsh claim of right doctrine to such a situation. In such case the Internal Revenue Bureau is not faced with the problem of deciding the merits of the claim to the funds received, for the question has been resolved by the interested parties. No question is here raised as to the *bona fides* of appellee's 1940 bookkeeping entries relative to the mistaken payments. Good faith is indicated by the fact that the taxpayer's $7500 obligation to the estate was not only recognized by him in 1940 but was paid in cash in 1943.

We conclude that appellee is not taxable on the $7500 in executor's fees which he received in 1940, but that he is taxable upon the $2500 he received in 1939.

The cause is remanded to the District Court with directions to enter judgment in accordance with the views herein expressed.

POPE, Circuit Judge (dissenting in part).

I would affirm the judgment in toto. My reason for disagreeing with the partial reversal is that I think the cases cited in footnote 4 of the opinion do not justify a departure from the rule of United States v. Waechter, 9 Cir., 195 F.2d 963.

Hormel v. Helvering, 312 U.S. 552, 61 S.Ct. 719, 722, 85 L.Ed. 1037, expressly recognized "the desirability and existence of a general practice under which appellate courts confine themselves to the issues raised below". But the case was considered an exceptional one because of the extraordinary circumstance that the new and controlling decision in Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, was announced after the Tax Court decision, but before that of the Court of Appeals.

No such special conditions here justify departure from the ordinary rule. This is not a Tax Court case. Hormel was a review of the Board of Tax Appeals, and the court found support for its out-of-the-ordinary rule in the broad language of the then statute relating to review in such cases. This case, on the contrary is, like Waechter, an appeal from a judgment of a district court. As no extraordinary circumstances are here present, I think we should recognize the impropriety of reversing[6] a district judge for failure to apply a theory which he had no opportunity to consider.

---

5. The cases are collected in 2 Mertens, Law of Federal Income Taxation, Sec. 12.103; Note, 154 A.L.R. 1276; "Taxing Unsettled Income: The Claim of Right Test," 58 Yale L.J. 955. .

6. A different situation is presented where it is sought to *sustain* the lower court's decisions on grounds other than those relied upon below. See Gulf, M. & O. R. Co. v. Williamson, 8 Cir., 191 F.2d 887, 893.