Alvin and Alice B. BUTCHKO,
Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 78–3113.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 10, 1980.

Decided Feb. 5, 1981.

Richard H. Foster, San Francisco, Cal.,
for petitioners-appellants.

Michael L. Paup, Washington, D. C., on
brief; Robert S. Pomerance, Washington,
D. C., for respondent-appellee.

Before DUNIWAY and GOODWIN, Circuit Judges, and KASHIWA,* United States Court of Claims Judge.

KASHIWA, Judge:

Alvin Butchko,[1] the taxpayer, appeals

---

* Honorable Shiro Kashiwa, Judge, United States
Court of Claims, sitting by designation.

1. Alvin's wife, Alice, is involved in this proceeding solely because a joint return was filed. For simplicity, only Alvin is referred to as the taxpayer.

from a judgment of the Tax Court[2] denying him a deduction of $358 claimed as an employee business expense. We affirm the decision of the Tax Court.

The facts have been stipulated by the parties. Taxpayer is a racetrack teller and, during the 1974 racing season, was employed by the California Jockey Club, Tanforan Racing Association, Pacific Racing Association, and the California Capitol Trotting Association. Taxpayer's job entailed accepting wagers at the various racetracks by selling pari–mutuel tickets. Errors occurred during such sales; if, at the end of the day, taxpayer had collected more money than he should he was considered to have an overage, if less, a shortage.

Taxpayer's employment was governed by the agreement entered into by his employers and the Pari-Mutuel Employee's Guild of California, Local 280, Service Employee's International Union, AFL–CIO (the Agreement). Our decision turns on the relationship created by the Agreement.

Article VI, Section 1 of the Agreement provides:

> SECTION 1. The rates of pay and job description attached to this Agreement are incorporated herein and made a part of this Agreement. It is agreed that the rates of pay set forth in the wage schedule and classifications attached hereto and made a part hereof, shall be the agreed compensation for work performed in one (1) working day during the racing season regardless of the hours required to perform such work ....

Specific daily rates of pay were set forth in an attachment to the Agreement.

Article VII, Section 1 imposed an obligation on taxpayer to satisfy shortages:

> SECTION 1. Any employee, except as set forth herein, shall not be held responsible for lost, stolen, or damaged property of the Employer except in the case of proven negligence or willful act on the part of the employee. Those em-

ployees handling money, tickets, programs, or any other articles held for sale to the public shall be accountable to the Employer for any loss or shortage thereof except when such loss or shortage is caused by: (a) force or threat of bodily harm; (b) acceptance of counterfeit mutuel tickets difficult to detect by a skilled and competent clerk; (c) acceptance of counterfeit money which is clearly not detectible; (d) proven theft; (e) catastrophe or other external causes beyond the control of the employee ....

Article VI, Section 8 prescribed the manner in which the taxpayer's obligation for shortages was to be satisfied.

> SECTION 8. Short slips shall be given to employees daily. Shortages will be offset against overages and the net shortage, if any, will be settled weekly. All amounts remaining over shall be given to the individual employee no later than ninety (90) days after the end of the Meet.

Also, the taxpayer executed an employment application for all of his employers which stated: "I agree to pay for all shortages for which I may be responsible."

In 1974, the taxpayer had total net shortages of $358. Two methods were used to reimburse the various employers for the shortages. Those shortages incurred during the taxpayer's employment by the Tanforan Racing Association and the Pacific Racing Association were deducted from the taxpayer's paycheck. Those incurred during the taxpayer's employment by the California Capitol Trotting Association were placed in a notice of shortage sent at the end of each week and were required to be paid before the taxpayer could work the following week.

In filing his federal income tax for the year 1974, the taxpayer reported the $358 in shortages as an employee business expense, deducting them from gross income in arriving at adjusted gross income.[3] The taxpay-

---

2. P-H Memo T.C. ⸀78,209.

3. The taxpayer did not take a consistent approach to this deduction. On his Form 2106 he reported the shortages as an employee business

er also elected to claim the standard deduction.[4] The Commissioner of Internal Revenue disallowed the deduction of shortages claimed on the ground that those expenses qualified only for an itemized deduction which was unavailable because of the taxpayer's election to use the standard deduction.

We are dealing with basic concepts of individual income tax; the relevant statutory scheme is as follows. I.R.C. § 61 provides that "all income from whatever source derived" must be included in gross income. I.R.C. § 62 then provides adjustments to gross income to arrive at adjusted gross income. Finally, I.R.C. § 63 provides alternative methods of determining taxable income, *i. e.*, the taxpayer can elect to use the standard deduction (I.R.C. §§ 141–145), *see* footnote 4, *supra*, or he can elect to claim any relevant deductions other than the standard deduction. *See Matteson v. Commissioner*, 514 F.2d 43 (8th Cir. 1975). In addition, there are certain statutory and caselaw exclusions from gross income. This case presents two issues: (1) may the taxpayer exclude the shortage payments from gross income, or (2) may the taxpayer include the shortages as an adjustment to gross income under I.R.C. § 62 to arrive at adjusted gross income.

I. A. There are no statutory exclusions from gross income applicable here; hence, the taxpayer seeks relief under a caselaw exclusion, namely, an exception to the "claim of right" rule.[5]

The taxpayer claims, because he repaid the shortages in the same year as his receipt of the wages, that he lacked any "claim of right" to the $358 and thus could exclude that amount from his gross income. The taxpayer heavily relies on *United States v. Merrill*, 211 F.2d 297 (9th Cir. 1954), for this proposition. From this perspective the principal question regarding the exclusion issue can be reduced to the following: were the wages set forth in Article VI, Section 1 of the Agreement subject to reduction by the net shortages, or did the net shortages constitute an independent collateral obligation owed by the taxpayer to his employers?

Contrary to the taxpayer's interpretation, we find that Article VI, Section 1 fixed the daily wages of the taxpayer. Article VI, Section 8 plus the employment applications created an independent and collateral obligation on behalf of the parties. Under the Agreement, the taxpayer was owed his daily wage irrespective of any shortages or overages.

In *Merrill* the taxpayer was allowed to exclude a sum mistakenly received under a claim of right where he "discovers and admits the mistake, renounces his claim to the funds, and recognizes his obligation to repay them." *Id.* at 304. *Merrill* is inapposite, however, because there the contractually determined compensation was the variable at issue, and such compensation received was subject to reduction. In the instant case the taxpayer's wages were fixed by Article VI, Section 1 of the Agreement, and the taxpayer never relinquished or renounced any amount of the compensation fixed under the Agreement.[6]

---

expense, deductible only if expenses were itemized on Schedule A.

4. For taxable years beginning after December 31, 1976, the standard deduction has been replaced by the zero bracket amount by the Tax Reduction and Simplification Act of 1977, section 102(a), Pub.L. No. 95–30, 91 Stat. 135.

5. This doctrine is based on *North American Oil Consolidated v. Burnet*, 286 U.S. 417, 424, 52 S.Ct. 613, 615, 76 L.Ed. 1197 (1932), where it was held that if "a taxpayer receives earnings under a claim of right and without restriction as to its disposition, he has received income which he is required to return, even though it

may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

6. Similarly, we find the other cases dealing with this issue cited by the taxpayer to be distinguishable. These cases all involve a situation where the compensation otherwise owed the taxpayer is adjusted per the agreement of the parties. *E. g., Estate of McNamee v. Commissioner*, P–H Memo T.C. ' 64,112 (retention of salary conditioned upon corporate earnings); *Fender Sales, Inc. v. Commissioner*, P–H Memo T.C. ' 63,119, and *Couch v. Commissioner*, 1 B.T.A. 103 (1924) (contract modification); *Gad-*

Nor do we find Rev.Rul. 79–311, 1979–2 C.B. 25, to be of assistance to the taxpayer. Rev.Rul. 79–311 deals with the tax treatment of the amounts advanced to employees in excess of the commissions earned, where such unearned advances were returned to the employer pursuant to an express contractual provision.

The employment contract considered in the revenue ruling provided for payment of commissions in anticipation of services to be performed in the future. Under *Beaver v. Commissioner*, 55 T.C. 85 (1970), the unearned advances were considered income at the time of payment. Because the unearned advanced commissions were repaid to the employer in the same year as they were received, Rev.Rul. 79–311 allowed the excess commissions to be excluded from the employees' income. Under Rev.Rul. 79–311, the taxpayers relinquished the unearned commissions, here, however, the contractually determined wages were never relinquished; thus, Rev.Rul. 79–311 is inapposite.

Accordingly, the contractually provided wages must be included in gross income under I.R.C. § 61, and any reduction thereof must be within the statutory scheme. *See Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955).

■ The Tax Court properly characterized the shortages as an employee business expense, analogous to the situation where an employee is required to buy tools or uniforms. The expenses are not deductible as adjustments to gross income under I.R.C. § 62, *see Williams v. Commissioner*, P–H Memo T.C. ¶ 79,439, thus they can be deducted only by itemizing. *See Auer v. Commissioner*, P–H Memo T.C. ¶ 52,335.

■ B. We noted above that two racetracks deducted the amount of the taxpayer's net weekly shortage from his paycheck. It is argued that these amounts never actually received should not be characterized as income. However, the taxpayer created an indebtedness to his employers for any net shortages. Using such funds to satisfy the taxpayer's obligation resulted in an economic benefit to the taxpayer to the extent of the obligation discharged, and such an economic benefit is income to him. *See Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929); Treas.Reg. § 1.61–12. Therefore, the fact of nonreceipt does not remove the amount at issue from being characterized as income. *See Tucker v. Commissioner*, 69 T.C. 675 (1978). Nor do we view the withholding as any sort of modification of the bargained-for wage structure. The Capitol Trotting Association did not withhold the shortages, instead it required all weekly shortages be paid before the taxpayer could work the following week. We view the withholding of such sums by the Tanforan Racing Association and the Pacific Racing Association as merely a different method of ensuring reimbursement.

■ II. Finally, the taxpayer argues that he should be viewed as having a separate trade or business with regard to the overages and shortages. By this approach, the taxpayer would be entitled to claim a deduction from gross income pursuant to I.R.C. § 62(1) to determine adjusted gross income. This argument is meritless. The Tax Court found that the shortages occurred in transactions which were an integral part of his employment as a pari-mutuel clerk. We do not believe that these errors in transactions constituting the heart of the taxpayer's employment should fairly be deemed a separate trade or business. No deduction may therefore be claimed under I.R.C. § 62.

Therefore, we hold that the net shortages constituted an employee business expense of the type which may be claimed only in an itemized deduction.

The decision of the Tax Court is affirmed.

*dy v. Commissioner*, 38 T.C. 943 (1962), *aff'd in relevant part, remanded in part on other* grounds, 344 F.2d 460 (5th Cir. 1965) (mistaken receipt subject to implied agreement to repay).