T.C. Memo. 1997-423


UNITED STATES TAX COURT


GUIDO RUGGIERO AND KRISTIN RUGGIERO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 1953-95.                    Filed September 22, 1997.

<u>Toni Robinson</u>, Alicia Gaudio, Dean Pinto, Daniel J.

Spilotro, Alfred P. Bruno, and Susan L. Moon, for petitioners.

<u>Elise F. Alair</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard

pursuant to the provisions of section 7443A(b)(3) and Rules 180,

181, and 182.[1]  Respondent determined a deficiency in the amount

_____

[1]  All section references are to the Internal Revenue Code
in effect for the year in issue.  All Rule references are to the
                                             (continued...)

of $290 in petitioners' 1991 Federal income tax.  On the basis of petitioners' amended return, as well as arguments at trial, it is clear that petitioners claim an overpayment in the amount of $461.

After concessions,[2] the issues for decision are:  (1) The characterization of income and expenses relating to petitioner Guido Ruggiero's (petitioner) activities during the taxable year 1991 and (2) the characterization of expenses incurred by petitioners in renting out their house during part of the year in issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time of filing the petition, petitioner resided at Coral Gables, Florida, and petitioner Kristin Ruggiero resided at Cambridge, Massachusetts.

---

[1](...continued)
Tax Court Rules of Practice and Procedure.

[2]  Petitioners have conceded they are not entitled to deduct travel expenses claimed in the amount of $3,732, and they are not entitled to deduct claimed Schedule E expenses for repairs and maintenance in the amount of $318 and depreciation in the amount of $2,824, attributable to the rental use of their Connecticut house.

The parties further agree that net royalty income in the amount of $236, received by petitioner Kristin Ruggiero, should have been reported on Schedule E, rather than on Schedule C.

1. Petitioner's Professional Activities

In 1987, petitioner began teaching at the University of Connecticut (UConn) as an associate professor of history. Petitioner received tenure in 1988 and stayed at UConn through the scholastic year 1993-94.[3]  As a professor at UConn, petitioner taught undergraduate courses in Western civilization and the Italian Renaissance and three graduate seminars entitled Topics in Italian History, The New Social and Cultural History, and Gender and Early Modern Europe.

In 1990, petitioner was awarded a John Simon Guggenheim (Guggenheim) fellowship in the amount of $27,000 and a Harvard Villa I Tatti fellowship in the amount of $6,500.[4]  Petitioner believed that the fellowships would provide him with the opportunity to conduct research for a book he was writing, relating to sexuality and power during the late Italian Renaissance.  Petitioner sought to work with unique Italian archival materials in the lively intellectual atmosphere afforded by the Villa I Tatti.  Petitioner also favored the Villa I Tatti because it was removed from the demands of the university

---

[3]  In 1994, petitioner began teaching at the University of Miami, Florida.

[4]  Harvard Villa I Tatti is an academic institution located near Florence, Italy, equipped with an extensive library and designed as a forum for scholars to conduct research and produce scholarly material.

environment.  Petitioner chose the topic of his fellowship research.

Petitioner worked in Italy from the fall of 1990 through the summer of 1991 and at Princeton University's Institute for Advanced Study during the fall of 1991.  Petitioner's work at Villa I Tatti entailed an examination of materials pertaining to cases brought before Inquisition courts.  Petitioner also conducted research in the Archivo di Stato, located in Venice.  While at Princeton University, petitioner integrated the archival research he had compiled in Italy with broader historical materials.

Petitioner's fellowship research resulted in a book which he authored, entitled Binding Passions:  Tales of Marriage, Magic, and Power at the End of the Renaissance (Oxford University Press 1993) (hereinafter Binding Passions).  On February 18, 1992, petitioner entered into an agreement with Oxford University Press to publish Binding Passions.  In exchange for granting Oxford University Press the copyright in Binding Passions, petitioner was entitled to royalties equal to 12.5 percent of the net receipts on the first 5,000 clothbound edition copies sold and 15 percent of the net receipts of all copies sold thereafter.  Petitioner was also entitled to royalties equal to 10 percent of the net receipts on the first 7,500 "inexpensive edition" copies,

and 12.5 percent of the net receipts on all copies sold thereafter.

In addition to his written materials, petitioner offered several lectures pertaining to his fellowship research, including:  "The World of the Illicit in Sixteenth Century Venice", at Harvard University, March 1993; "Love Magic and Power at the End of the Renaissance", at the University of East Anglia, England, March 1992; and "A Tale of Two Witches?", at Yale University, February 1992.

Petitioner has written other published works, including The Boundaries of Eros:  Sex Crime and Sexuality in Renaissance Venice, 1290-1500 (Oxford University Press 1985) and Violence in Early Renaissance Venice (Rutgers University Press 1980). Petitioner has also written entries contained in the Encyclopedia of Social History (Peter N. Stearns ed., Garland Press 1994) and 12 A Dictionary of the Middle Ages (Joseph R. Strayer ed., Charles Scribner's Sons 1982-1989).

Petitioner, when awarded the fellowships, was not eligible for sabbatical from UConn and sought to negotiate with the university for special leave, also known as a "release from teaching duties", in order to pursue research in connection with the fellowships.  Petitioner negotiated an arrangement whereby he would receive 100 percent of his academic salary from UConn while on leave and would reimburse the university for an amount equal

to 50 percent of his salary through the fellowship and grant proceeds.  A letter dated December 11, 1995, written by Richard Carterud, Assistant Controller for Grants and Contracts, University of Connecticut, described the arrangement as follows:

> * * * [Petitioner] did have an option as to whether he wanted to remit his grant/fellowship to the University and stay on the University of Connecticut's payroll at 100% of his academic salary or to keep the grant/fellowship's income and have his salary reduced to 50%.  His retirement program was enhanced by remitting his grant/fellowship income to the University.

During the taxable year 1991, petitioner received payments from UConn in the amount of $53,009[5] and fellowship proceeds in the amount of $33,500.  Petitioner's release from teaching duties was in effect during this time.  Pursuant to his agreement, petitioner remitted $27,600 to UConn out of moneys paid to him from Harvard and Guggenheim.  The fellowship proceeds were paid into petitioner's personal bank account, and petitioner then wrote checks from that account to UConn in an amount equal to one-half of his salary.[6]

---

[5]  All amounts are rounded to the nearest dollar.

[6]  Although the stipulation of facts indicates that petitioner remitted proceeds to UConn in the amount of $27,500, the record clearly indicates that the amount reimbursed was $27,600.  In such an instance, we are not bound by the stipulation of facts.  Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976).  We also note that the Form W-2 issued by UConn reflects "Wages, tips, other compensation" in the amount of $53,009, and "Medicare wages and tips" in the amount of $55,799.  Although the amount remitted by petitioner does not precisely
(continued...)

On their return for the taxable year 1991, petitioners reported the following income, attributable to petitioner's professional activities, as wages:

| Payor | Form Issued | Amount |
|-------|-------------|--------|
| UConn | W-2 | $ 53,009 |
| Guggenheim | 1099 | 27,000 |
| Harvard | 1099 | 6,500 |
| Emory University[1] | unknown | 100 |
| Total amount received | | 86,609 |
| Less: Fellowship proceeds paid to UConn | | (27,600) |
| Reported as wages | | 59,009 |

[1] This amount was paid to petitioner as a "reader's fee".

Thus, despite the fact that the fellowships were reported by the respective payors on Forms 1099, petitioners reported both of the fellowships ($27,000 plus $6,500) as wage income and then deducted from wages $27,600, the amount remitted to UConn. As a result, and with the addition of the $100 "reader's fee", petitioners originally reported $6,000 more in wage income than the amounts reflected on petitioner's Form W-2.

Petitioners also claimed deductions on Schedule A in the amount of $59,736, pertaining to unreimbursed employee business expenses. Of these expenses, $33,332 is attributable to

[6](...continued)
constitute one-half of either of these amounts, we assume that petitioner remitted the proper amount as required by the agreement.

petitioner's activities, while the remaining expenses in the amount of $26,404 are attributable to petitioner Kristin Ruggiero. In addition, petitioners attached to their return an alternative minimum tax computation which calculated an alternative minimum tax liability in the amount of $5,812.[7]

On August 12, 1992, petitioners submitted to respondent an amended return (Form 1040X). Attached to the amended return was a Schedule C which indicated "professor" as petitioner's profession. The Schedule C reflects gross receipts in the amount of $33,600, attributable to amounts petitioner received pursuant to the two fellowships, as well as a "reader's fee" from Emory University in the amount of $100. These amounts had been reported as wages on the original return, and petitioners accordingly reduced the amount of wages reported on the amended return. Consistent with the original return, however, the amount reported as wages on the amended return reflects total amounts indicated on the Form W-2 issued by UConn, reduced by the fellowship proceeds which petitioner remitted to UConn.

---

[7] The notice of deficiency indicates that the alternative minimum tax computation "per return" is $6,537. We assume that respondent made other mathematical adjustments to the alternative minimum tax which are not reflected in the record. In addition, despite petitioners' attachment of an alternative minimum tax computation to their return, petitioners' return does not reflect that alternative minimum tax computation as "Other Taxes". Since this adjustment is not reflected in the notice of deficiency, we further assume that respondent adjusted this item as a mathematical correction. Sec. 6213(b)(1).

Schedule C of the amended return reflects the following expenses attributable to petitioner's activities as a "professor":

| Expense | Amount |
|---|---|
| Office expense | $ 2,452 |
| Travel | 8,261 |
| Meals and entertainment | 27,291 |
| Less: 20% limitation | (5,458) |
| Phone--toll calls | 442 |
| Subscriptions | 327 |
| Research books | 166 |
| Total expenses | 33,481 |

Petitioners reduced Schedule A expenses claimed on the amended return by the amount of $33,332. Therefore, we assume that the expenses claimed on Schedule C of the amended return consist of the expenses claimed on Schedule A of the original return that are attributable to petitioner's activities, as well as additional expenses in the amount of $149.

Upon examination, respondent allowed $29,600 of the $33,332 in expenses claimed by petitioners on their original return in relation to petitioner's activities.[8] The notice of deficiency does not address the additional expenses claimed on the amended return in the amount of $149, and, accordingly, we deem

---

[8] Petitioners claimed expenses in the amount of $59,736 on Schedule A of their original return. Respondent has allowed all of these claimed expenses, except for travel expenses in the amount of $3,732, relating to petitioner's research and writing activities. Petitioners have conceded this adjustment. See supra note 2. Since $33,332 of the $59,736 in expenses claimed is attributable to petitioner's research and writing activities, respondent has allowed $29,600 of the claimed expenses relating to these activities ($33,332 - $3,732 = $29,600).

respondent to have disallowed those claimed expenses as well. Respondent determined that petitioner's expenses were incurred in connection with his employment with UConn and, therefore, were reportable as unreimbursed employee business expenses on Schedule A. As a result, respondent asserted that petitioner's alternative minimum tax liability was $6,655.

In addition, respondent determined that petitioners overstated wage income on their original return in the amount of $6,000. In so doing, respondent asserted that the reader's fee in the amount of $100 received from Emory University constituted "other income", rather than wages. Respondent also asserted that the fellowship proceeds were not taxable to any extent because petitioner remitted the fellowship proceeds to UConn in their entirety. Accordingly, respondent asserted that the entire amount which petitioner received from UConn, as reflected by the Form W-2, constituted taxable wages which could not be offset by any fellowship proceeds remitted by petitioner.

Petitioners have since modified their position as indicated on their original and amended returns. Prior to trial, petitioners submitted a memorandum which summarized their present position regarding items of income and expense pertaining to petitioner's activities as follows:

Income:
| | |
|---|---|
| Wage income from UConn | $53,009 |
| Less: Remittance to UConn | (27,600) |
| Total wages | 25,409 |

Other income:  Fellowship proceeds[1]                    33,500

Expenses:  Schedule C
  Gross receipts:  Reader's fee                              100
  Less: Petitioner's fellowship expenses           [2](29,600)
Total Schedule C loss                                 (29,500)

In comparison, respondent's present position is as follows:

Income:
  Wage income from UConn                             $53,009
  Less: fellowship proceeds remitted                     -0-
  Total wages                                         53,009

  Other income
  Fellowship proceeds                                    -0-
  Reader's fee                                           100
  Total other income                                     100

Expenses: Schedule A                                 $29,600

[1] Petitioners classify the fellowship proceeds as "other income" because they maintain that the proceeds are neither wages nor income from self-employment.  See Spiegelman v. Commissioner, 102 T.C. 394, 406 (1994) (holding that fellowship proceeds were not paid in consideration for services rendered).

[2] Although petitioners' summary reflects expenses claimed in the amount of $56,004, it is clear that this amount erroneously includes expenses attributable to petitioner Kristin Ruggiero in the amount of $26,404.  The difference between $59,736, the expenses claimed on the original return, and $3,732, the expenses which petitioners have conceded are not allowable, would leave $56,004.  Of the expenses claimed on the original return, $26,404 is attributable to Kristin Ruggiero.  Thus, the amount claimed is $29,600 ($56,004 less $26,404).

## 2.  Rental of Petitioners' Connecticut House

During the taxable year 1991, petitioners owned a house in Hampton, Connecticut.  Petitioner did not reside in the house at any time during 1991, while petitioner Kristin Ruggiero resided in the house from September to December 1991.  From January

through July during that year, petitioners rented the house to three students for a total of 210 days.

On Schedule E of their original return, petitioners reported rental income in the amount of $5,700 and claimed expenses for cleaning and maintenance in the amount of $318. On Schedule E of their amended return, petitioners claimed additional expenses for depreciation in the amount of $2,824, resulting in net rental income reported in the amount of $2,558. On Schedule A of their original and amended returns, petitioners claimed expenses attributable to the house for real estate property taxes in the amount of $2,686 and mortgage interest in the amount of $16,565.

Upon examination, respondent determined that petitioners' rental of their home did not constitute an activity engaged in for profit. Accordingly, respondent disallowed the claimed expenses and asserted that the income should have been reported as "other income" on Form 1040, rather than on Schedule E. The notice of deficiency made no adjustment or reclassification with respect to the mortgage interest and property taxes allocable to the rental use of the dwelling. Petitioners concede that they are not entitled to the claimed expenses for maintenance and depreciation. Petitioners now maintain that the rental income is reportable on Schedule E and may be offset by claiming $5,700 of the mortgage interest expense on Schedule E, rather than on Schedule A.

OPINION

We begin by noting that respondent's determinations are presumed correct, and petitioners bear the burden of proving that those determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Moreover, deductions are a matter of legislative grace, and petitioners bear the burden of proving that they are entitled to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

1.   Petitioner's Professional Activities

(a)   Characterization of Income

We first address the characterization of the income which petitioner received during 1991.  Petitioners acknowledge that petitioner received gross wages from UConn during the taxable year 1991 in the amount of $53,009.  Petitioners, however, contend that the fellowship proceeds remitted to UConn in the amount of $27,600 should be allowed as an offset against gross wages.

To support their position, petitioners argue that the fellowship proceeds remitted to UConn were returned to petitioner in the form of gross wages for the narrow purpose of allowing petitioner to retain employment benefits.  Accordingly, petitioners maintain that UConn acted as a conduit with respect to the remitted fellowship proceeds.  Petitioners suggest that petitioner's choice in "running the monies" through UConn should not alter the character of the fellowship proceeds.  Therefore,

petitioners argue that amounts paid to petitioner by UConn are not wages insofar as they reflect a return of fellowship proceeds previously remitted by petitioner.

Petitioners also argue that the fellowship proceeds which petitioner received in the amount of $33,500 are fully taxable; however, citing our opinion in Spiegelman v. Commissioner, 102 T.C. 394 (1994), petitioners contend that the fellowship proceeds constitute neither wages nor earnings from self-employment.

Respondent determined that petitioner's wage income for the taxable year 1991 totaled $53,009, the amount reflected on the Form W-2 issued by UConn. Respondent maintains that petitioner remitted all of the fellowship proceeds to UConn and, consequently, argues that petitioners are neither required to include the fellowship proceeds as income nor entitled to offset the proceeds remitted to UConn from wages received from UConn.[9]

It is clear that the various positions taken by petitioners, both on their amended return and at trial, were fashioned in an attempt to reduce their liability under the alternative minimum tax provisions. Petitioners' contentions that the fellowship proceeds were fully taxable as noncompensatory income, and that the remitted proceeds could offset gross wages paid by UConn, are an attempt to buttress their argument, discussed infra, that

---

[9] Respondent assumes a factual premise which is contrary to the stipulated facts and evidence in the record. Therefore, we shall disregard respondent's argument insofar as it relates to the portion of the fellowship proceeds that was not remitted to UConn.

petitioner's research and writing expenses were not incurred in his capacity as an employee of UConn.[10]

We do not agree with petitioners' contention that the remitted fellowship proceeds should offset gross wages received. Petitioner had an employment relationship with UConn which existed both prior to and subsequent to receipt of the fellowships, and the amount of gross wages received during the year in issue was determined in accordance with this agreement. Petitioner, by agreeing to remit a portion of the fellowship proceeds to UConn, maintained the terms of this employment relationship, including full salary and related benefits. We conclude, therefore, that the amounts paid to petitioner by UConn constitute wages in the full amount reflected on the Form W-2 issued by UConn.

We now turn to the characterization of the fellowship proceeds. The facts before us are not distinguishable from those presented in Spiegelman v. Commissioner, supra, where we held that fellowship proceeds are fully includable in the recipient's gross income, unless some statutory exclusion is applicable. Id. at 405-406. In this case, the fellowships were awarded to petitioner. After being awarded the fellowships, petitioner

---

[10] By claiming petitioner's fellowship expenses on Schedule C rather than as employee business expenses on Schedule A, petitioners minimize the effects of the alternative minimum tax. See Kant v. Commissioner, T.C. Memo. 1997-217.

assigned a portion of the proceeds to UConn. It is well settled that a taxpayer cannot reduce gross income by executing an anticipatory assignment of income earned by that taxpayer but not yet received. Lucas v. Earl, 281 U.S. 111 (1930); Johnson v. Commissioner, 78 T.C. 882 (1982), affd. without published opinion 734 F.2d 20 (9th Cir. 1984). On this basis, we reject respondent's contention that the fellowship proceeds remitted to UConn were not includible in gross income. We, therefore, conclude that the full amount of the fellowship proceeds ($33,500) is includible in gross income. Nevertheless, pursuant to our holding in Spiegelman v. Commissioner, supra, we hold that the fellowship proceeds are noncompensatory and should be characterized as "other income".

    (b)  Petitioner's Expenses

        (1)  Fellowship Proceeds Remitted to UConn

With respect to the fellowship proceeds remitted to UConn, both parties have suggested that the remitted proceeds may be used to offset petitioner's gross income. We have opined above that the amounts received from UConn and the amount received as a fellowship constitute gross income. In contrast to both parties' position, however, we find that the remitted fellowship proceeds constitute a deductible expense incurred as a condition of receiving full salary from UConn. It is clear that petitioner was required, pursuant to his employment with UConn, to pay over a portion of the fellowship proceeds. Accordingly, we hold that

the remitted fellowship proceeds constitute an employee business expense, deductible on Schedule A.  See Butchko v. Commissioner, T.C. Memo. 1978-209, affd. 638 F.2d 1214 (9th Cir. 1981) (holding taxpayer's payment to employer for cash register shortages resulted in employee business expense).

### (2)  Remaining Expenses

There is some confusion with respect to the amount of expenses remaining in dispute.  On Schedule C of the amended return, petitioners claimed expenses related to petitioner's research and writing in the amount of $33,481.  On the basis of arguments presented prior to trial, petitioners now appear to claim expenses relating to petitioner's activities in the amount of $29,600, the amount allowed by respondent.  See supra p. 11 & note 2 to table.  In any event, petitioners have offered no proof that they are entitled to deductions in excess of $29,600, and we sustain respondent's determination to that extent.

Respondent determined that petitioner incurred the allowable expenses as an employee of UConn.  Accordingly, respondent argues that petitioner's allowable work-related expenses are deductible as miscellaneous itemized deductions under section 67. In contrast, petitioners contend that petitioner was in the separate trade or business of writing scholarly materials when he incurred the expenses.  In so doing, petitioners argue that petitioner's activities were not related to his employment at UConn.

Petitioners contend, therefore, the expenses related to his research and writing activities are deductible on Schedule C.

Petitioners' argument in this regard, in similar fashion to their position concerning the characterization of the fellowship proceeds, represents an attempt to reduce the effects of the alternative minimum tax. Work-related expenses incurred by an independent contractor are deductible "above the line" (Schedule C) under section 62(a)(1), whereas unreimbursed expenses incurred by an employee are deductible "below the line" (Schedule A) as itemized deductions. Hathaway v. Commissioner, T.C. Memo. 1996-389. Section 56(b)(1)(A)(i) provides that, for the purposes of calculating a taxpayer's alternative minimum taxable income, no deductions shall be allowed for miscellaneous itemized deductions. Therefore, were petitioner's expenses incurred as part of a trade or business separate from his employment with UConn, the expenses would be deductible "above the line" and could be used to offset alternative minimum taxable income. See Kant v. Commissioner, T.C. Memo. 1997-217.

Petitioner's employment with UConn and receipt of a fellowship do not preclude the possibility that his research and writing activities constituted a separate trade or business; it is well settled that a taxpayer may engage in more than one trade or business. Gestrich v. Commissioner, 74 T.C. 525, 529 (1980), affd. without published opinion 681 F.2d 805 (3d Cir. 1982); Sherman v. Commissioner, 16 T.C. 332, 337 (1951). To be engaged

in a trade or business within the meaning of section 162,[11] "the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Although a reasonable expectation of a profit is not required, the taxpayer must have entered the activity, or continued it, with the bona fide objective of making a profit, as indicated by the surrounding facts and circumstances. Taube v. Commissioner, 88 T.C. 464, 478-479 (1987); sec. 1.183-2(a), Income Tax Regs. The regulations accompanying section 183 contain a nonexhaustive list of nine factors to consider when determining whether an activity is engaged in for a profit. Sec. 1.183-2(b), Income Tax Regs.

University professors, in their capacity as educators, regularly conduct research and produce scholarly materials pertaining to their particular area of competence. In addition, the receipt of the fellowship, as well as the publication of Binding Passions, enhanced petitioner's reputation as a scholar, and was certainly considered for purposes of determining his salary in succeeding years. Moreover, despite the royalty agreement in the record, petitioners have offered little evidence concerning the amount of income earned by petitioner for the

---

[11] Sec. 162(a) provides that there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.

publication of his work.  There is no history of profit potential nor any projections of profit potential from his activity. Accordingly, we conclude that petitioner did not engage in his research and writing activities with the primary purpose of producing income apart from the salary he earned as a professor or apart from the fellowship he received.  Therefore, petitioner's activities do not constitute a separate trade or business, and the related expenses are not deductible on Schedule C.

We also disagree with respondent's determination that petitioner incurred the expenses in question in his capacity as an employee of UConn.  Rather, we conclude that petitioner incurred the expenses in relation to the fellowship income.  It is clear from this record that the expenses claimed relate to the research and writing which petitioner engaged in pursuant to the fellowship.  Since we have held that the fellowship income constitutes noncompensatory income, petitioner's fellowship expenses are deductible pursuant to section 212.

2.   Rental of Petitioners' Connecticut House

We now address respondent's determination with respect to the items of income and expense attributable to the rental use of petitioners' house.

Respondent, employing the limitations set forth in section 183, determined that petitioners did not engage in the activity

of renting their house with a profit motive and are therefore precluded from deducting under section 162 or section 212 expenses attributable to its rental use. Accordingly, respondent disallowed all of petitioners' claimed expenses for cleaning and maintenance and depreciation attributable to the rental use of their house and asserted that the rental income was reportable as "other income". Petitioners concede that they are not entitled to the depreciation and maintenance expenses claimed on Schedule E of their original and amended returns. Petitioners, however, argue that they may fully offset the rental income by mortgage interest attributable to the rental use of the house.

Section 280A(a) provides that, except as otherwise provided in that section, no deduction otherwise allowable under chapter 1 of the Internal Revenue Code is allowable "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence." A taxpayer uses a dwelling during the taxable year as a residence if he uses the unit for personal purposes for a number of days which exceeds the greater of 14 days or 10 percent of the number of days during the taxable year for which the dwelling unit was rented at fair market value. Sec. 280A(d)(1). Nevertheless, some deductions that are attributable to the rental use of a dwelling unit are excepted from the blanket disallowance of section 280A(a) and can be deducted subject to the limitations imposed by subsections (c)(5)

and (e) of section 280A. Sec. 280A(c)(3). Section 280A(c)(5) limits deductions attributable to the rental use of such a dwelling unit to an amount not to exceed the excess of the gross rental income derived from the rental use over the sum of (1) the deductions allocable to the rental use that are otherwise allowable regardless of such rental use (such as mortgage interest and real estate taxes) plus (2) any deductions that are allocable to the rental activity in which the rental use of the residence occurs, but that are not allocable to the rental use of the residence itself. See secs. 163 and 164. Therefore, a taxpayer who rents a portion of a dwelling unit in which he or she also resides during the taxable year must offset rental income first by expenses allocable to the rental use which are otherwise allowable, such as mortgage interest and property taxes, and then, if any rental income remains, by other expenses related to the rental activity.

Petitioners acknowledge that the Connecticut house is considered a "personal residence" under section 280A(d)(1), because petitioner Kristin Ruggiero lived there for 4 months during the taxable year 1991. Section 280A(a), therefore, is applicable. Where section 280A(a) is applicable to a dwelling unit for a taxable year, the provisions of section 183 do not apply to such unit for the year. Sec. 280A(f)(3); see also

Bolton v. Commissioner, 77 T.C. 104, 108 (1981), affd. 694 F.2d 556 (9th Cir. 1982).

Respondent's position, insofar as it ignores the provisions of section 280A, is without legal foundation. Regardless of whether petitioners engaged in the activity of renting their home with the intent to earn a profit, section 280A requires petitioners to first offset rental income with expenses attributable to the rental use of the house which are otherwise allowable, such as mortgage interest paid. Petitioners do not argue otherwise. Therefore, petitioners are entitled to offset the rental income with mortgage interest paid in the amount of $5,700.[12]

To reflect the foregoing,

Decision will be entered
under Rule 155.

---

[12] Petitioners rented the house to the students for 210 days during the taxable year. Accordingly, petitioners' house was rented for 58 percent of the taxable year 1991 (210 days/365 days). The mortgage interest attributable to the rental use of their house, therefore, is $9,608 (58 percent of total mortgage interest in the amount of $16,565). Bolton v. Commissioner, 77 T.C. 104, 111 (1981), affd. 694 F.2d 556 (9th Cir. 1982). Since the mortgage interest attributable to the rental use of the Connecticut house exceeds rental income, the net rental income is zero.